HIGGINS v LAURITZEN

Docket No. 158503. Submitted July 6, 1994, at Grand Rapids. Decided
  March 7, 1995, at 9:15 A.M.

David and Melissa Higgins brought an action in the Newaygo
  Circuit Court against Bernard Lauritzen, individually and do-
  ing business as Lauritzen Well Drilling, and Lauritzen Well
  Drilling, Inc., seeking damages allegedly suffered as a result of
  their dairy herd being exposed to stray voltage from a water
  pump installed as part of a well that was drilled by Lauritzen.
  The court, Anthony A. Monton, J., granted summary disposi-
  tion for Bernard Lauritzen on the basis that the action was
  governed by the Sales Article of the Uniform Commercial Code
  and that the 1992 action arising out of the 1983 well drilling
  job was barred by the four-year limitation of MCL 440.2725;
  MSA 19.2725 and granted summary disposition for Lauritzen
  Well Drilling, Inc., on the basis that the corporation was not in
  existence until after the plaintiffs' action was filed. The plain-
  tiffs appealed.

The Court of Appeals held:

Where a contract involves the providing of a mixture of
  goods and services, the question whether the contract is subject
  to the provisions of the Sales Article of the Uniform Commer-
  cial Code is determined by looking at the predominant factor
  involved in the contract. If the contract is predominantly for
  the sale of goods, with the labor being incidental, it is subject to
  the UCC, but if the contract is predominantly for the sale of
  services, with the goods supplied being incidental, it is not
  subject to the UCC. The plaintiffs' undisputed allegations clearly
  establish that the agreement of the parties was for the render-
  ing of services, with the goods that were supplied being inciden-
  tal to the rendering of the services. Accordingly, the contract
  was not for a sale of goods that was subject to the Sales Article
  of the UCC, and the action is not barred by the limitation period
  of MCL 440.2725; MSA 19.2725.

Reversed and remanded.

*H. James Telman,* for the plaintiffs.

*Dilley, Dewey, Damon & Condon, P.C.* (by *Jonathan S. Damon*), for the defendants.

Before: HOLBROOK, JR., P.J., and MURPHY and J. C. KINGSLEY,* JJ.

PER CURIAM. Plaintiffs appeal as of right from a Newaygo Circuit Court order granting summary disposition for defendant Bernard Lauritzen, individually and doing business as Lauritzen Well Drilling (hereafter defendant), pursuant to MCR 2.116(C)(7). We reverse and remand for further proceedings.[1]

I

On January 23, 1992, plaintiffs, who are owners of a dairy farm, commenced this action against defendants to recover damages for various problems associated with their dairy herd. Plaintiffs alleged that defendant drilled a well and installed piping and an electrical water pump on their property in August, 1983, and that stray voltage from the water pump, which allegedly was installed improperly, adversely affected the health of their cattle, causing a decrease in the quality and production of milk, premature culling, miscarriages, increased veterinarian expenses, and other economic losses. Plaintiffs' complaint alleged five counts: (1) violation of the Michigan Consumer Protection Act,[2] (2) negligence, (3) breach of ex-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The circuit court's order also granted summary disposition for defendant Lauritzen Well Drilling, Inc., pursuant to MCR 2.116(C)(10), finding it undisputed that the corporation was not in existence until after plaintiffs' lawsuit was filed. Because plaintiffs have not challenged this portion of the ruling, it is affirmed.

[2] MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.*

press and implied warranties, (4) breach of contract, and (5) gross negligence.

Defendant moved for summary disposition, pursuant to MCR 2.116(C)(7), asserting that plaintiffs' cause of action was barred by the four-year period of limitation found in § 725 of Article 2 of the Uniform Commercial Code (UCC), MCL 440.2725; MSA 19.2725, which contains no discovery rule. In support of his motion, defendant submitted plaintiffs' interrogatory answers that indicated that defendant had last performed repairs on the well within one year of its installation in 1983.

Plaintiffs responded to defendant's motion by asserting that the predominant purpose of the parties' agreement was the procurement of services, rather than a sale of goods, and therefore the transaction fell outside the scope of Article 2. In support of their motion, plaintiffs submitted a copy of a construction lien that defendant had recorded on December 6, 1983, in connection with the drilling of the well and installation of the pump. Additionally, plaintiffs submitted an affidavit of plaintiff David Higgins, averring, among other things, that the "primary purpose" of the parties' agreement was for defendant "to provide the service of improving my property by drilling a well to provide water for domestic and farming purposes."

Following a hearing, the trial court adopted defendant's argument and, relying on *Neibarger v Universal Cooperatives, Inc,* 439 Mich 512; 486 NW2d 612 (1992), granted summary disposition for defendant pursuant to MCR 2.116(C)(7).

II

A party who files a motion for summary disposition under MCR 2.116(C)(7) may file supportive

material such as affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3), *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994). Where, as here, the moving party submitted supportive material, the court must consider it, along with any reponsive material submitted by the opposing party. MCR 2.116(G)(5). *Patterson, supra* at 434.

In *Neibarger,* our Supreme Court adopted the "economic loss doctrine" and held that where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC. 439 Mich 527-528. The Court acknowledged, however, that an injury caused by a service would not arise out of a "transaction in goods" and therefore would not be governed by Article 2 of the UCC. *Id.* at 533. Where a contract involves a mixture of goods and services, the Court adopted the following test set forth in *Bonebrake v Cox,* 499 F2d 951, 960 (CA 8, 1974), to determine whether the transaction is governed by Article 2:

> "The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved." [*Neibarger, supra* at 534.]

Generally, the question whether goods or services predominate in a hybrid contract is one of fact. See, e.g., *Downriver Internists v Harris Corp,* 929 F2d 1147, 1151 (CA 6, 1991); *United States v City of Twin Falls,* 806 F2d 862, 870 (CA 9, 1986), cert den sub nom *City of Twin Falls v Envirotech Corp,* 482 US 914 (1987); *Conopco, Inc v McCreadie,* 826 F Supp 855, 868 (D NJ, 1993). How-

ever, where there is no genuine issue of material fact in dispute regarding the provisions of the contract, a court may decide the issue as a matter of law. *Downriver Internists, supra;* see also *Neibarger, supra* at 536.

Applying the *Bonebrake* test to the undisputed facts in this case, we conclude that the contract between the parties was predominantly one for services, rather than a transaction of goods, and thus was not subject to Article 2 of the UCC. In *Osterholt v St Charles Drilling Co, Inc,* 500 F Supp 529 (ED Mo, 1980), the court held that a contract to install a well and water system on the plaintiff's property was predominantly a service contract and therefore outside the UCC. In reaching this conclusion, the court found that (1) the language of the contract was unmistakably that of service rather than of a sale, (2) the defendant was identified in the contract as a "contractor" and the contract acknowledged a mechanic's lien to secure the amount of the contract and repairs, (3) with two exceptions, there was no agreement specifying the various component parts of the water system that were to be installed, (4) the defendant essentially undertook to install a water system of indefinite description, rather than to install a detailed list of specific goods, and (5) the component parts did not become identified to the contract until they were actually installed on the plaintiff's property. *Id.* at 533.

Other courts have drawn similar conclusions under analogous facts. See *In re Trailer & Plumbing Supplies,* 578 A2d 343 (NH, 1990) (contract for the installation of plumbing supplies held to be predominantly a service contract); *McCarthy Well Co, Inc v St Peter Creamery, Inc,* 410 NW2d 312 (Minn, 1987) (contract to restore a creamery's artesian well to its original capacity held to be

predominantly a service contract); *Semler v Knowling,* 325 NW2d 395 (Iowa, 1982) (contract for the installation and hook-up of a cast-iron sewer line held to be predominantly a service contract); *Franklin v Northwest Drilling Co, Inc,* 215 Kan 304; 524 P2d 1194 (1974) (holding that the UCC does not apply to the rendition of services such as the drilling of an irrigation well); *Cork Plumbing Co, Inc v Martin Bloom Associates, Inc,* 573 SW2d 947 (Mo App, 1978) (installation of a completed plumbing system held not to be a transaction in goods governed by the UCC). In light of the UCC's admonition that courts promote uniformity among the jurisdictions that have adopted the UCC, MCL 440.1102(2)(c); MSA 19.1102(2)(c), we find these decisions to be highly persuasive.

Viewing the pleadings and all documentary evidence submitted by the parties, we conclude that the overall thrust or purpose of the parties' agreement was not the acquisition of goods, but rather the rendition of services by defendant, even though goods were required incidentally as a result of rendering the service. This conclusion is supported by plaintiff's affidavit that averred that, before contacting defendant to install the well, he had contacted another individual who had twice attempted unsuccessfully to drill a well on plaintiffs' property. Plaintiffs then contacted defendant, seeking defendant's expertise and knowledge in the method and manner of drilling a well through rock. Plaintiffs averred that "[t]he entire method, manner, and nature of equipment, and the exact location of the well was completely decided by the defendants." Plaintiffs were never shown "any type of brochure or literature as to what type of materials were intended to be used." We find these facts to be distinguishable from the milking system purchased and installed in *Neibarger*; thus, to

the extent that the trial court found the two transactions to be substantially similar, it erred.

Accordingly, in the interest of ensuring uniformity in the interpretation and application of the UCC, we conclude that the overall thrust of the parties' agreement was predominantly for the rendition of services, thereby taking the transaction out of Article 2 of the UCC. Thus, the trial court erred in granting summary disposition for defendant pursuant to MCR 2.116(C)(7).[3]

Reversed and remanded for further proceedings. Jurisdiction is not retained.

---

[3] We express no opinion concerning whether another applicable statute of limitations or related doctrine bars plaintiffs' claim.