557 N.W.2d 127 (1996)
219 Mich. App. 405
Arpad A. PENDZSU and Margiore Pendzsu, Deceased, Plaintiffs-Appellants,
v.
BEAZER EAST, INC., a Delaware Corporation, in its own right and as successor in interest to Koppers Company, Incorporated, Defendant-Appellee, and
Anchor Packing Company, a Delaware Corporation; Armstrong World Industries, Inc., as successor in interests to Armstrong Cork Company and Armstrong Contracting Supply (a/k/a A. C & S.), a Pennsylvania Corporation; Babcock & Wilcox Company, a Delaware Corporation; Brown Insulation Company, a Michigan Corporation; M.H. Detrick Company, a Delaware Corporation; Flexitallic Gasket Co., Inc., a Connecticut Corporation; GAF Corporation, in its own right and as successor in interest to the Ruberoid Company, a Delaware Corporation; Garlock, Inc., an Ohio Corporation; A.P. Green Refractories Company, a Delaware Corporation; Keene Corporation, in its own right and as successor in interest to Baldwin-Ehret-Hill, Inc., Baldwin-Hill, Inc., and Mundet Cork Corporation, a New York Corporation; Owens-Corning Fiberglass Corporation, a Delaware Corporation; Owens-Illinois, Inc., an Ohio Corporation; Pittsburgh-Corning Corporation, a Pennsylvania Corporation; W.R. Grace & Co.Conn., in its own right and as successor to Zonolite Co., a Connecticut Corporation; Fibreboard Corp., in its own right and as successor to Pabco Co., a Delaware Corporation; National Gypsum Co., a Delaware Corporation; United States Gypsum Co., a Delaware Corporation; General Refractories, a Pennsylvania Corporation; Dresser Industries, a/k/a Harbison Walker Refractories, a Delaware Corporation; North American Refractories, an Ohio Corporation; Kaiser Aluminum and Chemical Corp., in its own right and as successor to Kaiser Refractories, a Division of Kaiser Aluminum, a Delaware Corporation; Quigley Company, Inc., a New York Corporation; Crown, Cork & Seal Company, Inc., in its own right and as successor in interest to Mundet Cork Corporation, a New York Corporation; F.B. Wright Co., a Michigan Corporation; Grant Wilson, Inc., an Illinois Corporation; Plibrico Company, a Delaware Corporation; Arthur J. Peacock & Company, a Michigan Corporation; Rutland Fire Clay Company, a Vermont Corporation; Chicago Firebrick Company, an Illinois Corporation; Adience, Inc., Successor in interest to Adience Company, LP as successor to BMI, Inc., a Delaware Corporation; Rex Roto Corporation, in its own right and as successor in interest to Rex Clay Products Company, a Michigan Corporation; Detroit Edison Company, a Michigan Corporation; National Steel Corporation, a Delaware Corporation; MLX Corporation, f/k/a McLouth Steel Corporation, a Michigan Corporation; Midland Ross Corporation, in its own right and as successor in interest to Surface Combustion, an Ohio Corporation; Combustion Engineering, in its own right and as successor in interest to Combustion Engineering Refractories Division, Walsh Refractories and Refractory & Insulation Corp., a Delaware Corporation; Thiem Corporation, a Delaware Corporation, in its own right and as successor in interest to Universal Refractories, Inc.; Rapid American Corporation, in its own right and as successor to Philip Carey Manufacturing Company, Panacon Corporation, and Philip Carey Corporation, a Delaware Corporation; Adience, Inc., as successor in interest to Adience Company, LP, BMI, Inc., and Furnco Construction Corporation, a Delaware Corporation; Hi-Temp Products, Inc., in its own right and as successor in interests to Asbestos Specialties Co, a Michigan Corporation; A-Best Products Company, an Ohio Corporation; and Schad Boiler Setting Company, (d/b/a Schad Refractory Construction Company) a Michigan Corporation; Jointly and Severally, Defendants.
Amon McGHEE, Jr., Personal Representative of the Estate of Amon McGhee, Sr., Deceased, Plaintiff-Appellant,
v.
BEAZER EAST, INC., a Delaware Corporation, in its own right and as successor in interest to Koppers Company, Incorporated, Defendant-Appellee, and
Anchor Packing Company, a Delaware Corporation; Armstrong World Industries, Inc., as successor in interests to Armstrong Cork Company and Armstrong Contracting Supply (a/k/a A. C & S.), a Pennsylvania Corporation; Babcock & Wilcox Company, a Delaware Corporation; Brown Insulation Company, a Michigan Corporation; M.H. Detrick Company, a Delaware Corporation; Flexitallic Gasket Co., Inc., a Connecticut Corporation; GAF Corporation, in its own right and as successor in interest to the Ruberoid Company, a Delaware Corporation; Garlock, Inc., an Ohio Corporation; A.P. Green Refractories Company, a Delaware Corporation; Keene Corporation, in its own right and as successor in interest to Baldwin-Ehret-Hill, Inc., Baldwin-Hill, Inc., and Mundet Cork Corporation, a New York Corporation; Owens-Corning Fiberglass Corporation, a Delaware Corporation; Owens-Illinois, Inc., an Ohio Corporation; Pittsburgh-Corning Corporation, a Pennsylvania Corporation; W.R. Grace & Co.Conn., in its own right and as successor to Zonolite Co., a Connecticut Corporation; Fibreboard Corp., in its own right and as successor to Pabco Co., a Delaware Corporation; National Gypsum Co., a Delaware Corporation; United States Gypsum Co., a Delaware Corporation; General Refractories, a Pennsylvania Corporation; Dresser Industries, a/k/a Harbison Walker Refractories, a Delaware Corporation; North American Refractories, an Ohio Corporation; Kaiser Aluminum and Chemical Corp., in its own right and as successor to Kaiser Refractories, a Division of Kaiser Aluminum, a Delaware Corporation; Quigley Company, Inc., a New York Corporation; Crown, Cork & Seal Company, Inc., in its own right and as successor in interest to Mundet Cork Corporation, a New York Corporation; F.B. Wright Co., a Michigan Corporation; Grant Wilson, Inc., an Illinois Corporation; Plibrico Company, a Delaware Corporation; Arthur J. Peacock & Company, a Michigan Corporation; Rutland Fire Clay Company, a Vermont Corporation; Chicago Firebrick Company, an Illinois Corporation; Adience, Inc., Successor in interest to Adience Company, LP as successor to BMI, Inc., a Delaware Corporation; Rex Roto Corporation, in its own right and as successor in interest to Rex Clay Products Company, a Michigan Corporation; Detroit Edison Company, a Michigan Corporation; National Steel Corporation, a Delaware Corporation; MLX Corporation, f/k/a McLouth Steel Corporation, a Michigan Corporation; Midland Ross Corporation, in its own right and as successor in interest to Surface Combustion, an Ohio Corporation; Combustion Engineering, in its own right and as successor in interest to Combustion Engineering Refractories Division, Walsh Refractories and Refractory & Insulation Corp., a Delaware Corporation; Thiem Corporation, a Delaware Corporation, in its own right and as successor in interest to Universal Refractories, Inc.; Rapid American Corporation, in its own right and as successor to Philip Carey Manufacturing Company, Panacon Corporation, and Philip Carey Corporation, a Delaware Corporation; Adience, Inc., as successor in interest to Adience Company, LP, BMI, Inc., and Furnco Construction Corporation, a Delaware Corporation; Hi-Temp Products, Inc., in its own right and as successor in interests to Asbestos Specialties Co, a Michigan Corporation; A-Best Products Company, an Ohio Corporation; and Schad Boiler Setting Company, (d/b/a Schad Refractory Construction Company) a Michigan Corporation; Jointly and Severally, Defendants.
Docket Nos. 181268, 181271.
Court of Appeals of Michigan.
Submitted June 19, 1996, at Detroit.
Decided October 11, 1996, at 9:25 a.m.
Released for Publication December 23, 1996.
*130 Zamler, Mellen & Shiffman, P.C. by Neil A. Kay and Daryl Royal, of Counsel, Dearborn, for plaintiffs-appellants.
Still, Nemier, Tolari & Landry, P.C. by Thomas S. McLeod and Michelle E. Mathieu, Farmington Hills, for defendant-appellee.
Before WAHLS, P.J., and MURPHY and C.D. CORWIN,[*] JJ. *128
*129 WAHLS, Presiding Judge.
Plaintiffs' appeal as of right from the trial court's granting of defendant's motions for summary disposition in these asbestos-related actions. We affirm.
Plaintiff Arpad Pendzsu worked as a truck driver, cement mixer, and warehouse worker for Standard Fuel Engineering and Zero Refractories. During the course of his employment, he delivered materials and worked near projects at buildings owned by Ford Motor Company and National Steel Corporation, Great Lakes Division. Pendzsu alleges that his work required him to work in areas where asbestos-containing materials were used and that this exposed him to harmful asbestos fibers. Pendzsu was diagnosed with asbestosis on October 30, 1991.
Amon McGhee, Sr., worked as a laborer-maintenance at Great Lakes Steel from 1968 to 1990. During the course of his employment, McGhee worked near furnaces where asbestos-covered steam lines were located. He alleges that he was exposed to airborne asbestos fibers during procedures when the furnaces were rebuilt. He was diagnosed with lung cancer on April 7, 1990.
Defendant Beazer East, Inc. (hereinafter defendant), is the successor in interest to Koppers Company, Inc. In the early 1930s, Koppers Company was the contractor for the installation of two coke ovens at the Ford Rouge Plant. Koppers relined the Ford Rouge coke ovens in the 1960s and in 1979. In addition, Koppers performed relining and enlargement of blast furnaces and coke ovens at Great Lakes Steel in 1973.
On December 23, 1992, Pendzsu filed suit against defendant and forty-two other named defendants, claiming damages for products liability. On June 30, 1993, Amon McGhee, Jr., as personal representative of the estate of Amon McGhee, Sr., filed suit against defendant and twenty-seven other named defendants, claiming damages for products liability. On September 19, 1994, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(7), stating that plaintiffs' claims were barred by M.C.L. § 600.5839; M.S.A. § 27A.5839. The trial court granted defendant's motion.
Plaintiffs argue that the trial court erred in granting defendant's motion for summary disposition. When reviewing a motion for summary disposition pursuant to MCR 2.116(C)(7), this Court must accept the plaintiff's well-pleaded allegations as true and construe them in favor of the plaintiff. Witherspoon v. Guilford, 203 Mich.App. 240, 243, 511 N.W.2d 720 (1994). If there are no facts in dispute, the question whether the claim is statutorily barred is one of law for the court. Id. This Court reviews the trial court's decision on a motion for summary disposition de novo on appeal. Smith v. YMCA of Benton Harbor/St. Joseph, 216 Mich.App. 552, 554, 550 N.W.2d 262 (1996).
The statute of repose, M.C.L. § 600.5839(1); M.S.A. § 27A.5839(1), provides:
No person may maintain any action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making *131 the improvement, more than 6 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement, or 1 year after the defect is discovered or should have been discovered, provided that the defect constitutes the proximate cause of the injury or damage for which the action is brought and is the result of gross negligence on the part of the contractor or licensed architect or professional engineer. However, no such action shall be maintained more than 10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.
Plaintiffs argue, first, that the work performed by defendant's predecessor did not constitute an improvement under the statute, but rather constituted repair work. We disagree. In granting defendant's motion for summary disposition, the trial court incorporated by reference its opinion in a separate case where it held:
This Court rejects plaintiffs' invitation to start breaking down the improvements in terms of particular components to make a determination [of] what is an improvement to real property and what is not an improvement to real property. There is no question that these systems are an integral part of the power plant and the usefulness to the power plant.
The fact that asbestos products that were used in insulation may have to be replaced does not affect the conclusion that in fact these were improvements to real property and the asbestos is part of that improvement. The asbestos-containing products is what I mean when I say the asbestos.
When courts construe statutes, their primary goal is to ascertain and give effect to legislative intent. Institute in Basic Life Principles, Inc. v. Watersmeet Twp. (After Remand), 217 Mich.App. 7, 12, 551 N.W.2d 199 (1996). This Court should first look to the specific statutory language to determine the intent of the Legislature. Id. The Legislature is presumed to intend the meaning that the statute plainly expresses. Id. Judicial construction of a statute is not permitted where the plain and ordinary meaning of the language is clear. Id.
Here, the statute does not define the phrase "improvement to real property." If a statute fails to define a term, the term will be interpreted in accordance with the Legislature's intent and the term's common and approved usage. Travis v. Dreis & Krump Mfg. Co., 453 Mich. 149, 168-169, 551 N.W.2d 132 (1996); Jennings v. Southwood, 446 Mich. 125, 139, 521 N.W.2d 230 (1994). The purpose of Michigan's statute of repose is to shield architects, engineers, and contractors from stale claims and to relieve them of open-ended liability for defects in workmanship. Ali v. Detroit, 218 Mich.App. 581, 587-588, 554 N.W.2d 384 (1996); Witherspoon, supra, at p. 245, 511 N.W.2d 720.
In Adair v. Koppers Co., Inc., 741 F.2d 111 (C.A.6, 1984), the Sixth Circuit Court of Appeals decided a case brought under the Ohio statute of repose. The Ohio statute, like the Michigan statute, applied to actions for damages "arising out of the defective and unsafe condition of an improvement to real property." Id., at p. 112. The Adair court construed the phrase "improvement to real property" according to the rules of grammar and common usage and surveyed the opinions of courts in other jurisdictions that adopted a common-sense interpretation of "improvement" in construing similar statutes. Id., at p. 113. The court held that an improvement is defined as a "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." Id., at p. 114; for a similar definition, see Black's Law Dictionary (5th ed), p. 682. The court went on to state that, in applying the definition of improvement, "[t]he test for an improvement is not whether an improvement can be removed without damage to the land, but if it `add[s] to the value of the realty, for the purposes for which it was intended to be used.'" Adair, supra, at p. 115, quoting Mullis v. Southern Co. Services, Inc., 250 Ga. 90, 296 S.E.2d 579 (1982). Whether a modification adds to the value of the property for the purposes of its *132 intended use, as well as the nature of the improvement and its permanence, should also be considered. Id., at p. 114. In determining whether work constitutes an improvement rather than a repair, the work must be considered in light of the system, and not just the component:
"The issue is whether a component of a system which is definitely an improvement to real property is an improvement to real property itself. However, to artificially extract each component from an improvement to real property and view it in isolation would be an unrealistic and impractical method of determining what is an improvement to real property. Frequently, as in this case, an improvement to real property is going to consist of a complex system of components." [Id., at p. 115, quoting Mullis, supra.]
This Court followed the rationale of Adair in Fennell v. John J. Nesbitt, Inc., 154 Mich. App. 644, 650-651, 398 N.W.2d 481 (1986). We too adopt the reasoning of Adair and hold that its analysis is consistent with the purpose of Michigan's statute of repose. See O'Brien v. Hazelet & Erdal, 410 Mich. 1, 14, 299 N.W.2d 336 (1980); Ali, supra, at pp. 587-588, 554 N.W.2d 384; Witherspoon, supra, at p. 245, 511 N.W.2d 720.
Here, the material facts are not in dispute. Defendant was retained to design, manufacture, and install two coke ovens at the Ford Rouge plant in the 1930s. Defendant relined the ovens in the 1960s and in 1979. The relining process requires the rebuilding of brick contained within the oven that becomes worn out after continued use. Similarly, defendant was the engineering and procurement contractor for relining and enlarging the blast furnaces and coke ovens at Great Lakes Steel in the 1960s and in 1973. Plaintiffs do not dispute the characterization of the installation of a coke oven or a blast furnace as an "improvement." Similarly, the integral role of the coke ovens and blast furnaces as entities in their respective plants is not in dispute.
The fact that the brick that defendant installed in the relining process will eventually wear out is not dispositive. The permanency of a component is merely one of the factors considered in determining whether a modification adds to the value of the realty for the purposes for which it was intended to be used. Adair, supra, at pp. 114-115. Like the conveyor system at issue in Adair, supra, at p. 115, and the heating-ventilation-air conditioning (HVAC) system at issue in Fennell, supra, at p. 651, 398 N.W.2d 481, there is no genuine issue of material fact that the relining of the coke ovens and blast furnaces was "integral" to the usefulness of the respective plants. Accordingly, the trial court did not err in applying the statute of repose to plaintiffs' claims against defendant. Adair, supra, at p. 115, Fennell, supra, at p. 651, 398 N.W.2d 481.
Next, plaintiffs argue that the statute of repose does not apply to defendant in its role as a supplier. We disagree. First, plaintiffs never identified the exact building materials for which they claim defendant is liable as a supplier. In any case, it is not disputed that defendant was a contractor for purposes of the statute of repose. The statute of repose controls "any action" against a contractor for injury that arises "out of the defective and unsafe condition of an improvement to real property." M.C.L. § 600.5839(1); M.S.A. § 27A.5839(1). Although Michigan case law has not specifically addressed a hybrid situation under the statute of repose, this Court rejected the plaintiffs' attempt in Fennell, supra, at pp. 650-651, 398 N.W.2d 481, to characterize the HVAC system as a product placed into the marketplace. That is analogous to the claim here because, if this Court had accepted the Fennell plaintiffs' argument, the Fennell defendant would have been the supplier of the HVAC "product."
This issue is also analogous to how the Uniform Commercial Code, M.C.L. § 440.1101 et seq.; M.S.A. § 19.1101 et seq., deals with a contract that involves a mixture of goods and services. In that context, the court must determine whether the contract's predominant factor, its thrust, its purpose, is the rendition of service, with goods incidentally involved, or is a transaction of sale, with labor incidentally involved. Higgins v. Lauritzen, 209 Mich.App. 266, 269, 530 N.W.2d 171 (1995). Here, assuming arguendo that a *133 supplier of building materials is not controlled by the statute of repose, the supplying of building materials was incidental to defendant's role as a contractor in this case.
A court must look to the object of the statute and the harm that it was designed to remedy and apply a reasonable construction in order to accomplish the statute's purpose. ABC Supply Co. v. River Rouge, 216 Mich.App. 396, 398, 549 N.W.2d 73 (1996). As stated earlier, the purpose of Michigan's statute of repose is to shield architects, engineers, and contractors from stale claims and relieve them of open-ended liability for defects in workmanship. Ali, supra, at pp. 587-588, 554 N.W.2d 384. After reviewing the record, we hold that the trial court did not err in applying the statute of repose to any claims against defendant as a supplier. See Ali, id.; Higgins, supra, at p. 269, 530 N.W.2d 171; Fennell, supra, at pp. 650-651, 398 N.W.2d 481.
Finally, plaintiffs argue that application of the statute of repose to asbestos-related claims violated plaintiffs' due process rights. This position has been rejected by the Michigan Supreme Court. O'Brien, supra, at p. 15, 299 N.W.2d 336. The Legislature's constitutional power to change the common law authorizes it to extinguish common-law rights of action. Id. The Court opined:
By enacting a statute which grants architects and engineers complete repose after six years rather than abrogating the described causes of action in toto, the Legislature struck what it perceived to be a balance between eliminating altogether the tort liability of these professions and placing no restriction other than general statutes to being tort actions against architects and engineers. The Legislature could reasonably have concluded that allowing suits against architects and engineers to be maintained within six years from the time of occupancy, use, or acceptance of an improvement would allow sufficient time for most meritorious claims to accrue and would permit suits against those guilty of the most serious lapses in their professional endeavors. [Id., at p. 16, 299 N.W.2d 336.]
The fact that the Legislature has amended the statute since O'Brien to include contractors within its scope does not change this analysis. Accordingly, any inequity that this statute imposes on victims of asbestos-related diseases must be addressed to the Legislature.
Affirmed.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.