*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JONATHON MICHAEL ENOS,

Plaintiff-Appellee,

v

SHELLY LYNN HUNT, formerly known as
SHELLY LYNN ENOS,

Defendant-Appellant.

UNPUBLISHED
May 30, 2019

No. 344592
Presque Isle Circuit Court
Family Division
LC No. 17-084291-DM

Before: SWARTZLE, P.J., and M.J. KELLY and TUKEL, JJ.

PER CURIAM.

Defendant, Shelly Lynn Hunt, appeals as of right the judgment of divorce issued by the trial court on June 26, 2018, after a three-day bench trial. The trial court awarded to plaintiff, Jonathon Michael Enos, $550 in monthly spousal support for 30 months, divided various pieces of personal property, and declined to invade the real property that was plaintiff's separate property. We affirm.

## I. BACKGROUND

The parties were married in September 2004 and had two minor children. The family lived in a home that had been owned by plaintiff and plaintiff's mother before the marriage. Plaintiff's mother lived on the main floor, while plaintiff, defendant, and their children lived in lower level. Plaintiff's mother paid the mortgage and the property taxes, while plaintiff and defendant paid the utilities, including plaintiff's mother's cell phone bill, and insurance on the house. Plaintiff and defendant also bought groceries and other household items.

The parties separated in May 2017, and plaintiff filed for divorce soon after defendant left. Plaintiff requested child support and spousal support. The trial court temporarily awarded plaintiff $87 in monthly child support. Plaintiff requested $977 in monthly spousal support and half of defendant's retirement accounts. The parties each proposed how to divide the personal property; defendant did not contest that the home she and plaintiff lived in while they were married was plaintiff's separate property because it belonged to plaintiff and his mother before the parties were married. Defendant requested $100,000 in compensation for contributions she

made to the home while the parties were married, and she opposed plaintiff's request for spousal support on the basis that she could not afford to pay it. The trial court declined to invade plaintiff's separate property and declined to award defendant any portion of the value of the home. The trial court awarded plaintiff $213 in monthly child support and $550 in monthly, modifiable spousal support for 30 months. The trial court further divided the personal property largely in accordance with the parties' wishes.

## II. STANDARD OF REVIEW

"In granting a divorce judgment, the trial court must make findings of fact and dispositional rulings." *Skelly v Skelly*, 286 Mich App 578, 581; 780 NW2d 368 (2009) (quotation marks and citation omitted). This Court reviews for clear error the trial court's findings whether property is marital or separate. *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010). Findings of fact are clearly erroneous when "this Court is left with the definite and firm conviction that a mistake has been made." *Skelly*, 286 Mich App at 581 (quotation marks and citation omitted). "If this Court upholds the trial court's findings of fact, it must then decide whether the dispositional ruling was fair and equitable in light of those facts." *Id.* (quotation marks and citation omitted). "A dispositional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable." *McNamara v Horner*, 249 Mich App 177, 183; 642 NW2d 385 (2002). And we review a trial court's award of spousal support for an abuse of discretion. *Gates v Gates*, 256 Mich App 420, 432; 664 NW2d 231 (2003).

## III. DISCUSSION

## A. PLAINTIFF'S SEPARATE PROPERTY

Defendant first argues that the trial court abused its discretion by refusing to award defendant some portion of the value of plaintiff's separate property. We disagree.

When dividing property, the trial court "must first determine marital and separate assets." *Skelly*, 286 Mich App at 582. "Generally, marital assets are subject to division between the parties, but the parties' separate assets may not be invaded." *McNamara*, 249 Mich App at 183. Two statutory exceptions to this rule exist. First, the trial court may invade separate property if the assets "awarded to either party are insufficient for the suitable support and maintenance of either party." MCL 552.23(1). Second, the trial court may award a portion of separate property to a party "if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property." MCL 552.401.

"Once a court has determined what property is marital, the whole of which constitutes the marital estate, only then may it apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances." *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010). When apportioning the property, "[t]he trial court need not achieve mathematical equality, but the trial court must clearly explain divergence from congruence." *Reed v Reed*, 265 Mich App 131, 152; 693 NW2d 825 (2005).

Notably, defendant does not dispute that the real property the family lived in is plaintiff's separate property. Instead, defendant argues that the two statutory exceptions, MCL 552.401 and MCL 552.23(1), should have resulted in her being awarded some of the value of the real property.

## 1. MCL 552.401

MCL 552.401 provides:

> The circuit court of this state may include in any decree of divorce or of separate maintenance entered in the circuit court appropriate provisions awarding to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property. The decree, upon becoming final, shall have the same force and effect as a quitclaim deed of the real estate, if any, or a bill of sale of the personal property, if any, given by the party's spouse to the party.

At the outset, on appeal, defendant argues that the trial court failed to consider this statutory exception. But the record clearly shows that the court did consider it. The court stated:

> Defendant contends that she made significant contributions which enhanced the value of the real estate but I can't find support for that contention in the proofs here. Certainly not substantial contributions. . . .
>
> You folks lived here for 13 years. Again, rent free. And the property appreciated over that time. But that's the sort of passive enhancement of value that—that doesn't result from contributions of the—of the Defendant. And so without evidence of financial or other contributions to that appreciation I—I don't find support for the Defendant's claim on the real estate.

Thus, defendant's position that the court failed to consider this statutory provision is without merit. Regardless, our review of the trial court's ruling does not reveal any error.

This Court in *Korth v Korth*, 256 Mich App 286; 662 NW2d 111 (2003), has addressed the question of parties' contributions to real property and how to divide the assets under this provision. In *Korth*, the defendant had purchased vacant, real property for $11,000 before the parties married. *Id.* at 292. After the parties married, the plaintiff's name was added to the deed, the land was cleared, and the house was built on the land. *Id.* The plaintiff contributed 5% to 10% of the work on the house that the defendant and his friends built; the plaintiff cooked, cleaned, and performed other chores, and she ultimately provided $7,500 of the $55,000 total that the parties invested in the house. *Id.* The Court ruled that the equity in the property *during* the marriage was a marital asset because of the plaintiff's contributions, while the down payment and the equity in the property and appreciation in its value *before* the marriage were separate assets. *Id.* at 292-293.

In the instant case, as an example of the contributions defendant made to the property, defendant first cites the value of the improvements she helped make to the basement. Defendant testified that she and plaintiff spent about $5,000 on building materials purchased for the completion of the basement of the house before she moved in. However, the evidence was clear that these improvements occurred *before* the parties married. Indeed, defendant acknowledged that the basement improvements happened before she moved into the house and that the parties did not marry until after they moved into the house together. Therefore, these improvements were not made while the parties were married, and as a result, they are not proper considerations under MCL 552.401. See *id.*

Defendant next notes that in addition to replacing siding on the house, she and plaintiff had constructed or obtained a staircase, a deck, docks, boat launches, and boat hoists. But defendant, in her brief on appeal, does not identify how much money she spent on these various items or how much these items contributed to the value of the real property. "A party may not leave it to this Court to search for a factual basis to sustain or reject its position." *Great Lakes Div of Nat'l Steel Corp v Ecorse*, 227 Mich App 379, 424; 576 NW2d 667 (1998).

Defendant also claims that she contributed to the purchase of various building materials, including wood paneling, hardwood floors, a bath tub, a shower, and sinks which remain on the property. In her brief on appeal, defendant states that most of these items "remain[] in the pole barn." Indeed, at trial, defendant testified that these materials were located in the pole barn, the garage, or the downstairs and, due to a lack of "time or energy," never were installed; as a result, "they just sat." But because these items have not been installed, and according to defendant are simply stored on the real property, they obviously have not added to the value of the real estate, despite the fact that defendant testified that she and plaintiff spent approximately $3,000 to $4,000 on them. More importantly, since these items have not been affixed to the house, these items would be considered personal property and not part of the real estate, see *Pendzsu v Beaszer East, Inc*, 219 Mich App 405, 410; 557 NW2d 127 (1996) (emphasis added; quotation marks and citation omitted) (defining "improvement to real property," in part, as "a *permanent* addition to or betterment of real property that enhances its capital value"), so the question of whether defendant was due a portion of the value of this *personal* property, which did not act to increase the value of any other property, MCL 552.401 is irrelevant here.

Defendant also claims that she is entitled to invade plaintiff's real property because of the construction of the pole barn. Defendant's testimony differed from plaintiff's and his mother's testimony on this point. Plaintiff and his mother both testified that plaintiff's grandmother fully funded the pole barn, which cost $10,000. Defendant testified that she and plaintiff took out a loan on a Corvette or tractor to finance the rest of the pole barn, which cost $8,000 or $10,000 more than the $10,000 plaintiff's grandmother contributed to the construction of the pole barn. Defendant produced a document showing a loan for over $12,000 and testified that this loan, which she and plaintiff paid back, partially funded the construction of the pole barn. The trial court, however, noted that defendant produced no documentation to support her testimony that the loan actually was for the pole barn in contrast with plaintiff's and his mother's testimony that plaintiff's grandmother fully funded the pole barn. In other words, the trial court found plaintiff and his mother more credible on this point and found that defendant did not contribute to the pole barn. "In reviewing findings, this Court defers to the trial court's determination of credibility." *Berger v Berger*, 277 Mich App 700, 707; 747 NW2d 336 (2008) (quotation marks

-4-

and citation omitted); see also MCR 2.613(C). Taking into consideration the court's credibility determination, we are not left with a definite and firm conviction that the trial court made a mistake. Moreover, as before, defendant did not offer any evidence to show how much of the value of the real property was attributable to the pole barn.

In sum, defendant has identified no clear error in the trial court's conclusion that her role in improving the property did not reflect a significant and compensable contribution. Defendant has failed to show how any post-marriage improvements she undertook contributed to the value of the house. Moreover, a mathematically equal division of property is not required, and the trial court's observation that defendant was able to live in the house rent-free for 14 years was an additional equitable reason for rejecting defendant's claim that she should be awarded part of the value of the real property.

## 2. MCL 552.23(1)

The second statutory exception that defendant relies on is MCL 552.23(1), and it provides:

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

Thus, "MCL 522.23(1) permits the invasion of a spouse's separate assets when, after the division of the marital assets, 'the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party . . . .' " *Korth*, 256 Mich App at 291, quoting MCL 552.23(1). Consequently, although not expressly stated by defendant in her brief on appeal, her implicit argument is that the resulting judgment of divorce is insufficient for her suitable support and maintenance.

On appeal, defendant's sole argument regarding her status after the divorce is that she "is left homeless while plaintiff lives free in the home he owns with his mother." Defendant does not cite to the record to support, and does not otherwise explain, her contention that she is "homeless" as a result of the terms of the divorce judgment. Presumably, defendant simply is referring to the fact that, as she noted, she is no longer able to live in the home she had been living in, while plaintiff is allowed to.[1] But this is hardly a rarity. In many if not most divorce actions, a party will have to move out of the marital home. This fact alone does not mean that a

---

[1] In fact, defendant testified that she was paying rent, along with a roommate, which cannot be considered "homeless."

party who has to move out is incapable of finding another place to live or, more pertinently, that the judgment of divorce was "insufficient for the suitable support and maintenance" of that person. Accordingly, defendant has wholly failed to show how the trial court failed to properly apply the statutory exception of MCL 522.23(1).

Defendant also suggests that the trial court erred by dividing the marital property without considering the necessary factors. Those factors include:

(1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992).]

However, this issue is not properly before us because it was not contained in defendant's statement of the questions presented in her brief on appeal. Her stated issue dealt only with the trial court's purported failure in considering the statutory exceptions contained in MCL 552.401 and MCL 552.23 to allow a court to invade a party's separate property. Accordingly, the issue regarding the court's consideration of the nine factors contained in *Sparks*, which have nothing to do with those statutory exceptions, is abandoned.[2]  See MCR 7.212(C)(5); *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008).

## B.  SPOUSAL SUPPORT

Defendant argues that the trial court abused its discretion by awarding $550 in monthly spousal support to plaintiff for 30 months. We disagree. "A trial court awards spousal support to balance the needs and incomes of the parties so that neither party is impoverished, and the trial court awards spousal support on the basis of what is just and reasonable under the circumstances of the case." *Elahham v Al-Jabban*, 319 Mich App 112, 129; 899 NW2d 768 (2017). Factors a trial court should consider when awarding spousal support include:

(1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony,

---

[2] In any event, we note that the trial court primarily divided the parties' personal property in accordance with the parties' wishes. A party cannot challenge on appeal a matter the party has agreed to. *Hodge v Parks*, 303 Mich App 552, 556; 844 NW2d 189 (2014). The only departures from defendant's requested list of property were the award of a tractor, two kayaks, and a Jet Ski to plaintiff, and the trial court's award to defendant of a Cadillac SRX in need of $1,000 in repairs and the award of a GMC Sierra to plaintiff. Each party was awarded the vehicle in his or her possession and was making payments on the vehicle. Defendant did not specifically challenge the award of any of these pieces of personal property on appeal, so she has not shown how the trial court erred in its division of the personal property.

(7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Berger*, 277 Mich App at 726-727.]

Initially, defendant argues that plaintiff did not comply with the MCR 3.206(A)(6)'s[3] requirement that plaintiff submit a verified statement in connection with his request for spousal support. This Court has rejected a claim that a party's request for relief should be dismissed for noncompliance with a court rule when the party challenging the relief did not suffer prejudice as a result of the noncompliance and when "it [was] clear at the time of the hearing the parties knew precisely what was at issue." *Heugel v Heugel*, 237 Mich App 471, 483-484; 603 NW2d 121 (1999). In this case, defendant knew that spousal support was at issue, and defendant challenged, and continues to challenge, the award of spousal support. Defendant did not show that she suffered prejudice as a result of the noncompliance, and defendant has not shown that she did not know the basis for the request for spousal support.

The trial court first considered the relationship and conduct of the parties. The trial court determined that plaintiff was the primary provider at the start of the marriage, while defendant was the primary provider toward the end of the marriage. The trial court further considered that defendant took care of plaintiff's mental and physical care, while acknowledging that plaintiff's "mental health conditions . . . did make him erratic from time to time." The trial court added that plaintiff did well when he took his medication and found that plaintiff was taking his medication and taking proper care of himself because the children wanted to stay with him.

Defendant maintains that the trial court did not consider plaintiff's abusive behavior. The trial court may not have given much weight to plaintiff's "erratic" behavior, but defendant's testimony about this behavior was limited to relatively brief periods of time when plaintiff was unemployed for six to nine months in 2009 and for one year in 2012. The parties did not separate until 2017. In the context of discussing plaintiff's behavior during these periods of unemployment, defendant stated that plaintiff was not taking his medication at times, but she did not specify when. When it announced its rulings, the trial court twice stressed that plaintiff should continue to take his medication because it appeared to help. Also in the context of testifying about plaintiff's behavior when he was unemployed in 2009 and 2012, defendant testified about offensive comments plaintiff made to her, but she did not testify that plaintiff made these comments throughout their marriage. Accordingly, defendant has not demonstrated that the trial court's conclusions regarding plaintiff's erratic behavior did not adequately account for how he behaved throughout the marriage.

---

[3] MCR 3.206(A)(6) was the proper rule at the time of the proceedings, but that provision was later recodified as MCR 3.206(A)(5), effective September 1, 2018.

Defendant argues that the necessity of obtaining a PPO and plaintiff's violations of the PPO demonstrated plaintiff's abusive conduct. Plaintiff admitted that he violated the no-contact provision of the PPO by going to defendant's workplace, sending defendant flowers and a card and e-mailing her, traveling with defendant and the children to go shopping in Traverse City, and spending a day with defendant at the park. The most hostile encounters were plaintiff's appearance at defendant's workplace, for which he was arrested, and defendant's description of the time plaintiff went to defendant's house and screamed and yelled at her, which resulted in the police escorting plaintiff out of defendant's house. Defendant testified that she only went shopping with plaintiff and the children in Traverse City because she felt pressured to go, but she did not testify that plaintiff was violent. Defendant also admitted that she continued to communicate with plaintiff after obtaining the PPO for the purpose of communicating about the children. For this reason, she ultimately agreed to dismiss the PPO and the allegations of violations and agreed to enter a restraining order that permitted the parties to communicate about the children. Although the trial court did not comment on the PPO when it issued its rulings, it noted while hearing testimony about the PPO that it knew about the PPO, which it had signed, and the circumstances surrounding the PPO and the violation. Regarding an alleged incident of sexual abuse toward the minor son which purportedly caused defendant to leave plaintiff, defendant testified that she contacted CPS about the incident, but the record contains no indication of the result of that investigation or whether plaintiff was prohibited from seeing the children for any period of time. Additionally, the children continue to spend most of their time with plaintiff, according to defendant's testimony, showing that removal of the children from plaintiff's custody was not warranted. The trial court's discussion of plaintiff's mental health condition, his medication, and his sometimes "erratic" behavior reflects its consideration of plaintiff's behavior, and we find no abuse in its resolution of those issues.

While the trial court did not expressly refer to the length of the parties' marriage during its discussion of spousal support, it did mention earlier in its ruling that the parties had been married for approximately 14 years. Defendant cites *Johnson v Johnson*, 346 Mich 418; 78 NW2d 216 (1956), to argue that the Supreme Court "found that a marriage of 20 years or more was a significant factor in awarding spousal support." Defendant is correct that the length of the marriage in *Johnson* was 20 years, but *Johnson* contains no other mention of the length of the marriage and its bearing on the award of spousal support. *Id*. at 421, 426-432. "A party cannot simply announce a position and expect the court to search for authority to sustain or reject that position." *Hodge*, 303 Mich App at 557. If defendant is suggesting that no spousal support is warranted for a marriage that lasted fewer than 20 years, defendant has not supported this proposition.

Third, the trial court considered the abilities of the parties to work. The trial court found that plaintiff was employed, had a current income of around $18,000, and had "the potential to work his way up considerably from that," as the trial court expected he would. The trial court found that defendant had done well for herself, working as a nurse and earning an annual income of almost $50,000. Defendant argues that plaintiff is employed and "will continue to obtain raises and advancement." Defendant's argument is consistent with the trial court's finding, so defendant has not demonstrated that this finding was clearly erroneous.

In the context of considering the parties' abilities to work, the trial court noted that defendant was 43, while plaintiff was 50. Defendant faults the trial court for failing to consider

the impact of the parties' ages on the spousal support award. The trial court only awarded spousal support for 30 months because it expected plaintiff to "be in a much better position financially" in two or three years. Defendant has not shown how the parties' ages in 30 months will so significantly affect their earning capacities that the trial court should have expounded on the effects of their ages, nor did defendant acknowledge that the award of spousal support was only for 30 months. Further, the trial court's mention of the parties' ages in the context of finding that both parties were currently able to work and to continue working shows that the trial court did not find that the parties' ages had an impact on their abilities to work in the next two-and-one-half years.

Fourth, the trial court considered the source and amount of property awarded. The trial court noted that plaintiff would be keeping his separate property of the house, which would not require the payment of rent, while defendant would have to pay rent after she moved out. The trial court commended defendant for finding a way to reduce her rent payment by getting a roommate and sharing the rent. Defendant testified that taking on a roommate reduced her rent and utilities per month to $300 each. Defendant stated that, when she and plaintiff lived together, they paid for utilities, phone, plaintiff's mother's cell phone bill, and groceries. However, she introduced no evidence of the value of these bills and how they compared to her new rent and utilities obligations. As previously discussed, defendant largely agreed to the trial court's division of personal property. Accordingly, the trial court considered the fact that defendant was previously not paying rent, and the trial court separately addressed the few disputed items of personal property.

Defendant challenges the trial court's finding that defendant had the ability to pay spousal support, citing an exhibit the trial court did not admit because it contained inaccuracies. Defendant continues to rely on the figures in this non-admitted exhibit, which she may not do, as it is not part of the record, nor has she demonstrated that the trial court erred in not admitting it. Moreover, defendant's testimony about her income and her expenses coincide with the trial court's finding that defendant's stated expenses and the amount of spousal support ordered were within defendant's income, albeit with no surplus. The trial court's award of spousal support was primarily based on the current differential between the parties' incomes. Further, defendant testified that she had only three overnight visits with the children in 2018 by the time of the May 2018 bench trial, thus reducing the amount of her expenses related to the children. Additionally, the trial court ordered each party to pay his or her own debts, thereby relieving defendant of responsibility for plaintiff's debts.

Defendant faults the trial court for making no findings regarding the standard of living. The trial court stated that it considered the parties' standard of living while they were married, plaintiff's continuing to live in a lakefront home, and defendant's move to a rental property. The trial court then noted the absence of other evidence about defendant's home and could only suppose that defendant's home was not as nice as plaintiff's $500,000 lakefront home. In short, the trial court took note of and recognized defendant's reduced standard of living. Defendant identifies no evidence that the trial court overlooked regarding defendant's standard of living. Therefore, defendant has not established that the trial court made insufficient findings about the standard of living.

In sum, the trial court considered several factors, only one of which was plaintiff's conduct. Defendant has singled out plaintiff's abusive conduct as the basis for challenging spousal support, but defendant has not discussed the details of that conduct and has not established that the trial court's findings were clearly erroneous or that the trial court abused its discretion by awarding plaintiff temporary, modifiable spousal support.

Affirmed. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Brock A. Swartzle
/s/ Michael J. Kelly
/s/ Jonathan Tukel