HALL v GENERAL MOTORS CORPORATION

Docket No. 196929. Submitted October 14, 1997, at Detroit. Decided May 12, 1998, at 9:00 A.M. Leave to appeal sought.

Wayne A. Hall brought an action in the Wayne Circuit Court against General Motors Corporation, alleging products liability relating to an injury he sustained while repairing an automobile manufactured by General Motors. At the time of the injury, Hall lived and worked as a mechanic in North Carolina, and the automobile was owned by a North Carolina resident and was registered, licensed, and insured in North Carolina. Hall received medical treatment in North Carolina for his injury before he moved to Michigan and filed the action as a Michigan resident against General Motors, a Delaware corporation that does business throughout the United States. General Motors moved for the dismissal of the action, arguing that, under Michigan choice-of-law jurisprudence, North Carolina law applies to bar the action under a North Carolina statute of repose that bars an action for personal injury, death, or property damage arising out of a defective product if, as in this case, the action is brought more than six years after the initial purchase of the product. The court, Paul S. Teranes, J., denied the motion. Hall appealed.

The Court of Appeals *held*:

In a tort case presenting a choice-of-law question, Michigan law is to apply unless a rational reason to do otherwise is found to exist. In determining whether a rational reason to displace Michigan law exists, a two-step analysis is undertaken: First, the court must determine if any foreign jurisdiction has an interest in having its law applied. If no jurisdiction has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign jurisdiction does have an interest in having its law applied, the court must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

In this case, North Carolina has a substantial interest in having its law apply in view of the facts that Hall was a North Carolina resident and worker when he was injured, the automobile was owned, registered, licensed, and insured in North Carolina, Hall received medical treatment in North Carolina, and North Carolina has an economic interest in encouraging General Motors to do bus-

iness there by shielding General Motors from open-ended products liability claims. Michigan, on the other hand, has a minimal interest in having its law apply. Michigan's interest stems from Hall's postin-jury move to Michigan. However, for Michigan choice-of-law analy-sis, a plaintiff's residency is to be determined as of the date of injury, not as of the date of the filing of the lawsuit, because doing otherwise could give rise to forum shopping. Because Hall was a North Carolina resident at the time of his injury, he is not a Michi-gan resident for purposes of choice-of-law analysis.

Reversed and remanded for dismissal.

M. J. MATUZAK, J., concurring, stated that the result reached by the majority is mandated by *Farrell v Ford Motor Co*, 199 Mich App 81 (1993), and MCR 7.215(C)(2). Were this not so, the preferred approach would be to hold that Michigan law must apply to this case because Michigan's interests outweigh those of North Caro-lina. General Motors has an enormous economic presence in Michi-gan, and North Carolina's statute of repose should not be used to protect a non-North Carolina manufacturer for injuries sustained in North Carolina arising out of the automobile's design in Michigan or manufacture in Ohio.

1  CONFLICT OF LAWS — TORTS — INTEREST ANALYSIS.

In a tort case presenting a choice-of-law question, Michigan law is to apply unless a rational reason to do otherwise is found to exist; in determining whether a rational reason to displace Michigan law exists, a two-step analysis is undertaken: First, the court must determine if any foreign jurisdiction has an interest in having its law applied; if no jurisdiction has such an interest, the presumption that Michigan law will apply cannot be overcome; if a foreign juris-diction does have an interest in having its law applied, the court then must determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

2. CONFLICT OF LAWS — TORTS — INTEREST ANALYSIS — PLAINTIFFS' RESIDENCY.

A plaintiff's residency, for purposes of determining the relative inter-ests of Michigan and a foreign jurisdiction in a tort case that presents a choice-of-law question, is to be determined as of the date of injury, not as of the date of the filing of the lawsuit.

*Grenn & Grenn, P.C.* (by *Frederick M. Grenn* and *Margaret P. Andrews*), for the plaintiff.

*Bowman and Brooke* (by *Peter H. Webster*), for the defendant.

Before: SAAD, P.J., and O'CONNELL and M. J.
MATUZAK* , JJ.

SAAD, P.J.

## I

### NATURE OF THE CASE

Plaintiff's personal injury, products liability claim against General Motors Corporation raises a choice-of-law question of first impression under Michigan law: is plaintiff's residency at the time of injury or at the time of filing suit controlling? Because plaintiff resided in North Carolina when injured, and in Michigan when he brought suit, we must decide which residency controls. This determination will dictate the outcome of plaintiff's claim because, other than the residency of plaintiff, all significant factors here point to the application of North Carolina law. Plaintiff lived and worked in North Carolina when he was injured by a vehicle owned, registered, licensed, and insured in North Carolina, and he subsequently received medical treatment in North Carolina. The only connection this incident has to Michigan is plaintiff's postinjury move to Michigan.[1]

If North Carolina law applies, its six-year statute of repose would bar plaintiff's claim.[2] Because the vehi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Of course, defendant GM can be found and sued here but GM does business in all states, including North Carolina.

[2] The North Carolina statute of repose at issue, NC Gen Stat 1-50(6) provides that

> [n]o action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

cle was sold in 1975 and the injuries occurred in 1994 (well beyond the six-year statute of repose), plaintiff's claim would be barred under North Carolina law. On the other hand, plaintiff's claim could be pursued under Michigan law, which has no statute of repose and whose three-year statute of limitations[3] would not bar plaintiff's 1996 suit arising out of a 1994 injury.

For the reasons discussed below, we hold that plaintiff's residency at the time of injury is controlling under Michigan's choice-of-law jurisprudence. Accordingly, North Carolina's statute of repose bars plaintiff's claim. We therefore reverse the circuit court's denial of GM's motion to dismiss, and remand for dismissal consistent with this opinion.

II

BACKGROUND

In 1994, while a resident of North Carolina, plaintiff worked as a mechanic for Bunn's Mobile Truck Repairs. In his capacity as a mechanic, plaintiff injured himself as he worked on a 1975 Chevrolet Camaro manufactured by GM. Plaintiff asserts that defective design of the relevant part of the vehicle caused his injury; therefore, plaintiff's claims are predicated on products liability theories.

At the time of the accident, the vintage vehicle was registered, licensed, and insured in North Carolina and owned by a North Carolina resident. The vehicle was manufactured at GM's Norwood, Ohio, plant. GM's world headquarters are in Detroit, but GM does busi-

---

[3] MCL 600.5805(9); MSA 27A.5805(9).

ness in all fifty states.[4] GM has facilities in North Carolina and does substantial business there, including purchasing materials and parts to be incorporated into its automobiles.

After plaintiff's injury, but before suit was filed, plaintiff moved from North Carolina to Michigan. Following his move to Michigan, plaintiff continued to receive medical treatment in North Carolina.

After plaintiff filed suit in Michigan, GM filed its motion to dismiss, contending that, pursuant to Michigan choice-of-law analysis, North Carolina law applied and that North Carolina's statute of repose barred plaintiff's suit. In response, plaintiff asserted that the law of the forum state (Michigan) should apply because plaintiff's Michigan residency *when the complaint was filed* should be determinative, and therefore both plaintiff and GM were Michigan residents.

In denying GM's motion to dismiss, the trial court concluded that residency is typically determined as of the date the complaint is filed. Therefore, for purposes of its choice-of-law analysis, the trial court incorrectly treated plaintiff as a Michigan resident. The court also erroneously ruled that, if residency were determined as of the date of injury, Michigan law would apply because this would be GM's expectation, given that the vehicle was designed in Michigan. Finally, the court found that North Carolina's statute of repose should not be applied through Michigan's borrowing statute[5] because that statute permits Michi-

---

[4] GM is actually a Delaware corporation, with its principal place of business in Michigan.

[5] MCL 600.5861; MSA 27A.5861.

gan to borrow another state's statute of *limitations*, not a statute of repose.[6]

III

ANALYSIS

In tort cases, Michigan courts use a choice-of-law analysis called "interest analysis" to determine which state's law governs a suit where more than one state's law may be implicated. See *Sutherland v Kennington Truck Service, Ltd*, 454 Mich 274, 278-286; 562 NW2d 466 (1997). Although this balancing approach most frequently favors using the forum's (Michigan's) law, Michigan courts nonetheless use another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter:

> [W]e will apply Michigan law unless a "rational reason" to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests. [*Id.* at 286.]

Here, we conclude that Michigan's interest is minimal and that North Carolina has a significant interest in having its law applied.

As noted above, plaintiff lived in North Carolina, worked for a North Carolina employer, and was injured in North Carolina by a vehicle owned, regis-

---

[6] While we wish to make clear that we do not adopt the trial court's reasoning regarding this point, we need not reach this issue today.

tered, licensed, and insured in North Carolina, and plaintiff subsequently received medical treatment at Duke Medical Center in North Carolina. North Carolina, therefore, obviously has a substantial interest in applying its law to this dispute.

Michigan case law reveals additional reasons why North Carolina has a substantial interest in applying its law to this dispute. In *Farrell v Ford Motor Co*, 199 Mich App 81; 501 NW2d 567 (1993), the plaintiff's decedent (a North Carolina resident) was killed in an automobile accident that occurred in North Carolina, allegedly as a result of a defective transmission. In *Farrell*, defendant Ford made the identical argument advanced by GM here—that North Carolina's six-year statute of repose barred the plaintiff's claim. Applying Michigan's choice-of-law rules, the *Farrell* panel held that North Carolina law applied to bar the claim. The *Farrell* Court's conclusion and reasoning is significant and pertinent to our inquiry:

> Plaintiff contends that because the policy behind the statute of repose is to protect manufacturers from "open-ended" liability stemming from the manufacture or design of their products, the only reasonable interest North Carolina can assert is the protection of those who conduct manufacturing and design activities within its borders. According to plaintiff, Ford has no such facilities in North Carolina and thus North Carolina has no interest in applying its law for the protection of Ford. . . .
>
> After thorough review, we are satisfied that North Carolina has an obvious and substantial interest in shielding Ford from open-ended products liability claims. Ford unquestionably generates substantial commerce within the State of North Carolina. . . . It is obviously in North Carolina's economic interest to encourage manufacturers, such as Ford, to do business in North Carolina. The sales taxes collected, salaries paid, and materials purchased all contrib-

ute to North Carolina's economy. The presence of a Ford
manufacturing plant within the borders of North Carolina is
not dispositive with regard to the economic interests at
issue. [*Id.* at 92-93.]

Here, North Carolina has the identical interest in
shielding GM from "open-ended products liability
claims" that it did in shielding Ford from such claims
in *Farrell*: it is in North Carolina's economic interest
to encourage GM to do business in that state. As in
*Farrell*, we conclude that North Carolina has a sub-
stantial interest in having its law applied to this
dispute.

On the other hand, the state of Michigan has a min-
imal interest in having its law applied to this dispute.
We again look to *Farrell*, where our Court stated:

Michigan has little or no interest in this North Carolina
accident involving a North Carolina resident. *Michigan has
no interest in affording greater rights of tort recovery to a
North Carolina resident than those afforded by North Car-
olina.* Michigan is merely the forum state and situs of
defendant's headquarters. Such minimal interests are insuf-
ficient to justify the result-oriented forum shopping that has
been attempted. [*Id.* at 94 (emphasis added; citation
omitted).]

Similarly, here, the accident occurred in North Car-
olina, injuring plaintiff, who, *at the time of injury*,
was a North Carolina resident working on a vehicle
registered in North Carolina.

However, plaintiff attempts to distinguish *Farrell*
(where the plaintiff was a North Carolina resident
both at the time of injury *and at the time of filing
suit*) by arguing that plaintiff here is a Michigan resi-
dent (i.e., that although he was a North Carolina resi-
dent at the time of injury, he moved to Michigan

before filing suit). He contends that, if plaintiff is considered a Michigan resident, this fact is sufficient to "tip the scales" toward application of Michigan law. As noted above, the effect of a plaintiff's postinjury change of residency on the choice-of-law analysis is an issue of first impression in Michigan.

The only Michigan case that appears to address this specific issue does not squarely hold that residency at the time of injury is determinative. In *Hampshire v Ford Motor Co*, 155 Mich App 143; 399 NW2d 36 (1986), the plaintiff filed suit in Michigan after being hit by a stolen vehicle in California. The plaintiff alleged that the antitheft device that Ford used caused Ford vehicles to be more susceptible to theft than other makes. In determining which state's law to apply, our Court noted, "[b]oth plaintiff and the driver of the vehicle *were residents of the state of California when the accident occurred." Id.* at 145 (emphasis added). Later in the decision, the Court stated:

> Michigan has no significant interest in this litigation. The plaintiff *was a resident living in California at the time of the accident* and has never resided in Michigan. *The accident occurred in California and the Ford vehicle involved was registered and licensed in California.* The connections to Michigan are limited to the fact that Ford's headquarters are located in Michigan and the action was filed in this state. We note that plaintiff is apparently now a resident of Massachusetts. [*Id.* at 147 (emphasis added).]

Our Court applied California law and affirmed the trial court's grant of summary disposition. Though this case suggests that residency at the time of the injury is dispositive, it falls short of reaching this express holding. We therefore look to decisions from

other states that have addressed this precise conflict-of-laws issue.

In *Reich v Purcell*, 67 Cal 2d 551; 63 Cal Rptr 31; 432 P2d 727 (1967), the Supreme Court of California was asked to apply California law where a family was involved in an automobile accident in Missouri while on their way from their home in Ohio to consider relocating to California. (The two members of the family who survived and maintained the wrongful death suit did later move to California and filed suit there.) In its choice-of-law analysis, the court declined to consider the survivors as California residents, stating:

> Although plaintiffs now reside in California, their residence and domicile at the time of the accident are the relevant residence and domicile. . . . [I]f the choice of law were made to turn on events *happening after the accident, forum shopping would be encouraged. [Id.* at 555 (emphasis added).]

See also *Perloff v Symmes Hosp*, 487 F Supp 426 (D Mass, 1980) (Massachusetts federal court applied Massachusetts law, despite fact that the plaintiffs moved to California before filing suit); *Summers v Interstate Tractor & Equipment Co*, 466 F2d 42, 48, n 3 (CA 9, 1972) (Oregon forum; the plaintiffs' subsequent relocation to be near relatives not to be considered in choice-of-law analysis); *Seattle-First Nat'l Bank v Schriber*, 51 Ore App 441, 449; 625 P2d 1370 (1981).

In *Ferren v General Motors Corp*, 137 NH 423; 628 A2d 265 (1993), the Supreme Court of New Hampshire reached a similar result. There, the plaintiff lived and worked in Kansas from 1961 until 1974. He

then moved to New Hampshire, where, fifteen years later, he was diagnosed with an illness allegedly related to his exposure to lead dust at the defendant's plant in Kansas. Kansas had a ten-year statute of repose that would have barred the plaintiff's claim; New Hampshire did not. The *Ferren* court articulated the parties' positions as follows:

> The Ferrens . . . maintain that because they have resided in New Hampshire since 1974 and because Mr. Ferren discovered his illness while living in this State, these are "substantial connections" to the facts and issues of this case to render New Hampshire law applicable. In addition, the Ferrens argue that as a matter of policy, "[s]ince Kansas would not provide any type of remedy to the plaintiffs, [the New Hampshire court] should apply its own law in protecting citizens such as Dennis Ferren from the harsh results of Kansas law."
>
> GMC contends that the case is governed by the Kansas workers' compensation statute because Mr. Ferren was an employee of GMC when he was exposed to lead-containing products while residing in Kansas and working in a Kansas battery-making plant pursuant to a contract of employment that arose entirely in Kansas. The fact that the plaintiffs moved to New Hampshire after the events giving rise to the lawsuit is, GMC argues, insufficient to apply New Hampshire law. [*Id.* at 425.]

The *Ferren* court concluded that the employment relationship arose entirely within the state of Kansas and that the fact that the Ferrens resided in New Hampshire at the time of suit, standing alone, was insufficient to warrant application of New Hampshire law. *Id.* at 426-427. See also *Gutierrez v Swaim, Inc*, 1994 US Dist LEXIS 1813, * 3; 1994 WL 62843 (SD NY, 1994); *O'Brien v Grumman Corp*, 475 F Supp 284, 294 (SD NY, 1979); *Wheeler v Standard Tool & Mfg Co*, 359 F Supp 298, 301 (SD NY, 1973). Cf. *Miller v*

*Miller*, 22 NY2d 12, 21-22; 290 NYS2d 734; 237 NE2d 877 (1968) (postaccident move of the *defendant* from Maine to New York was considered in determining whether to apply the Maine statutory limitation on wrongful death action brought by New York plaintiff).

The rationale that permeates these decisions is a judicial objective of preventing plaintiffs from forum shopping by postinjury moves. While the record here does not reveal whether plaintiff's motive involved forum shopping, we nonetheless conclude that forum shopping would be encouraged if we adopt the position urged by plaintiff. We see a grave danger in reaching a decision that would permit postinjury events, exclusively within the control of one party, to determine which state's law will apply. This danger is particularly problematic where, as here, a plaintiff's claim would be totally barred in the state of injury and could only be restored by a move to a state with laws more favorable to the claim.

For all these reasons, we hold that, for Michigan choice-of-law analysis, a plaintiff's residency is determined as of the date of the injury, not as of the date of the filing of a lawsuit. In other words, where as here, a plaintiff is not a resident of Michigan at the time an injury occurs, but becomes a Michigan resident before filing a lawsuit in Michigan, the plaintiff's residency at the time of injury controls. Having reached this conclusion, we find that plaintiff here was not a Michigan resident for purposes of choice-of-law analysis. We therefore find the analysis in *Farrell* to be determinative and conclusive:

> Michigan has little or no interest in this North Carolina accident involving a North Carolina resident. Michigan has no interest in affording greater rights of tort recovery to a

North Carolina resident than those afforded by North Carolina. Michigan is merely the forum state and situs of defendant's headquarters. Such minimal interests are insufficient to justify the result-oriented forum shopping that has been attempted. [*Farrell, supra* at 94 (citation omitted).]

In light of our conclusion that North Carolina law controls this dispute, we need not address defendant's argument regarding the effect of Michigan's borrowing statute, MCL 600.5861; MSA 27A.5861.[7] See *Farrell, supra* at 94. Michigan's borrowing statute basically provides that whichever statute of limitations time-bars a plaintiff's claim (i.e., the statute of the state where an injury occurs, or Michigan's statute) should apply.[8] However, without addressing the parties' arguments concerning whether Michigan's borrowing statute applies to statutes of *repose*, we note that the existence of this borrowing statute evidences, at a minimum, legislative intent to discourage suits in Michigan that would be time-barred in other states. Our ruling today is certainly reflective of the legislative scheme designed to prevent forum shopping in order to resurrect claims time-barred in other jurisdictions.

---

[7] MCL 600.5861; MSA 27A.5861 provides in relevant part:

An action based upon a cause of action accruing without this state shall not be commenced after the expiration of the statute of limitations of either this state or the place without this state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of this state the statute of limitations of this state shall apply.

[8] See the text of the borrowing statute, *supra*, n 7.

IV

CONCLUSION

We conclude that North Carolina's law applies to this matter, and on the basis of our reading of its statute of repose, NC Gen Stat 1-50(6), that plaintiff's claim is time-barred. The circuit court's denial of defendant's motion to dismiss was erroneous and is hereby reversed and this matter is remanded for entry of dismissal. We do not retain jurisdiction.

Reversed and remanded.

O'CONNELL, J., concurred.

M. J. MATUZAK, J. (*concurring*). I concur in the result reached by the majority because I believe that the result is mandated by *Farrell v Ford Motor Co*, 199 Mich App 81; 501 NW2d 567 (1993), and MCR 7.215(C)(2). I write separately to express my disagreement with the conclusion in the instant case and *Farrell*. I do not believe that North Carolina's interests in a products liability case against a domestic automobile manufacturer somehow outweigh Michigan's interests. Although General Motors has a distribution network in North Carolina, GM's commercial relationship with that state is insignificant when compared to its enormous economic presence in Michigan and consequential effect on this state. I prefer the analysis presented in *Mahne v Ford Motor Co*, 900 F2d 83, 88-89 (CA 6, 1990), a factually similar case where the United States Court of Appeals for the Sixth Circuit rejected the argument that a Florida statute of repose would apply over Michigan law. GM's headquarters and a significant part of its operations are located in Michigan, so applying this state's law should not defeat defendant's expectations. *Mahne*, at 88. Nor do

I believe that North Carolina has any significant interest in having its statute of repose applied in this case. The automobile at issue was manufactured in Ohio and designed in Michigan. Instead of protecting a North Carolina manufacturer, the statute is being used to protect an out-of-state manufacturer for injuries sustained in North Carolina arising out of wrongs alleged to have been committed in Michigan or Ohio. Aside from the binding effect of *Farrell* there is no good reason to extend the benefits of the North Carolina statute of repose to defendant. *Mahne*, at 88.

Nor do I believe that the North Carolina statute of repose would apply under Michigan's borrowing statute, MCL 600.5861; MSA 27A.5861. Michigan law recognizes the significant difference between statutes of repose and statutes of limitation. *O'Brien v Hazelet & Erdal*, 410 Mich 1, 15; 299 NW2d 336 (1980); *Pendzsu v Beazer East, Inc*, 219 Mich App 405, 410; 557 NW2d 127 (1996). The Legislature is presumed to intend the meaning plainly expressed by statutory language. *Pendzsu*, at 409. Section 5861 refers only to "statute[s] of limitations" rather than repose, and so should not be interpreted to import statutes of repose.