NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0325n.06

No. 12-1662

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Apr 02, 2013*
DEBORAH S. HUNT, Clerk

WELLS FARGO ADVANTAGE NATIONAL )
TAX FEE FUND; WELLS FARGO ADVANTAGE )
MUNICIPAL BOND FUND; LORD, ABBETT )
MUNICIPAL INCOME TRUST - LORD, )
ABBETT HIGH YIELD 12MUNICIPAL BOND )
FUND; PIONEER MUNICIPAL HIGH INCOME )
ADVANTAGE, )
)
      Plaintiffs-Appellants, )
)
v. )
)
HELICON ASSOCIATES, INC., et al., )
)
      Defendants-Appellees. )
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

O P I N I O N

BEFORE: DAUGHTREY, McKEAGUE, and GRIFFIN, Circuit Judges.

**McKEAGUE, Circuit Judge.** At the center of this appeal is Michael Witucki, who ran a corporation that sold a building to a charter school of which he was the Chief Administrative Officer. Witucki's dual roles created a conflict of interest that violated Michigan law. Dorsey & Whitney, LLP, defendant-appellee, acted as underwriters' counsel for a bond issue that financed the building purchase. Dorsey allegedly drafted the Preliminary Official Statement knowing of the conflict of interest but failed to disclose it. Plaintiffs-appellants bought a majority of the issued bonds.

As a result of the Michigan law violation and other problems with the bond issue, the chartering entity of the charter school forced the "unwinding" of the bond issue, which caused

Plaintiffs to lose several million dollars. Plaintiffs brought suit in federal district court, alleging that Dorsey & Whitney violated state and federal securities laws, and that Dorsey & Whitney was liable for common-law negligent misrepresentation.

The district court granted Dorsey & Whitney's motion to dismiss on the Connecticut Uniform Securities Act claim and granted Dorsey & Whitney's motion for summary judgment on the negligent-misrepresentation claim. For the reasons set forth below, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

**I.**

Michigan law authorizes the creation of public school academies ("charter schools"), which are managed by private entities but publicly funded. These schools are considered public schools subject to the supervision of the state board of education. Charter schools cannot charge tuition, but they can borrow money. Crescent Academy ("Crescent"), a charter school, received its charter from Bay Mills Community College ("Bay Mills") in August 2004. As the chartering entity, Bay Mills was responsible for certain financial oversight and could revoke the charter if Crescent violated its Charter Contract or Michigan law.

Michael Witucki, a defendant in the underlying action, wore several hats in relation to Crescent Academy. Witucki was the Chief Administrative Officer of the school. As the Chief Administrative Officer, Witucki was a public servant subject to the provisions of Contracts of Public Servants with Entities Act, which prohibits a public servant from being a party, either directly or indirectly, "to any contract between himself or herself and the public entity of which he or she is an officer or employee." Mich. Comp. L. §§ 15.321–.322. Helicon Associates, Inc. ("Helicon"),

managed Crescent Academy under a "Consultancy Services Agreement." Witucki was the President and principal owner of Helicon and signed the Consultancy Services Agreement on behalf of Helicon. Witucki was also the General Manager of SAAS, LLC. SAAS purchased an office building in Southfield, Michigan, renovated the building, and then leased the building to Crescent. The lease provided Crescent with an option to purchase.

Witucki allegedly helped convince the Crescent board of directors to issue bonds in order to purchase the school for $5 million, when in fact Witucki knew the building was worth much less. Witucki signed an offer to purchase the building as the General Manager of SAAS. Crescent hired Herbert J. Sims & Co, Inc. ("Sims & Co."), and Municipal Capital Markets, Inc. ("Municipal Capital"), as underwriters for the bond issue.

Municipal Capital hired Dorsey & Whitney to act as underwriters' counsel. In a January 1, 2003, engagement letter,[1] Dorsey & Whitney informed Municipal Capital that the law firm would conduct certain traditional underwriters' counsel services, including advising Municipal Capital about disclosure obligations, but would not conduct due diligence work. In its role as underwriters' counsel, Dorsey & Whitney researched Michigan law; prepared an initial draft of the Preliminary Official Statement, which became the Official Statement; edited and revised the Official Statement; drafted and circulated operative documents; drafted the opinion of Kevin Foley (Crescent's attorney for the bond issue) regarding the validity of the bond issue; reviewed the Charter documents of

---

[1]Though the engagement letter predates Municipal Capital's involvement in the Crescent bond issue, the parties do not contest that the engagement letter forms at least a portion of the contract between Dorsey & Whitney and Municipal Capital that is at issue in this appeal.

Crescent and Drew Academy; and advised Municipal Capital on due diligence and disclosure obligations. All of this conduct allegedly fell within the gamut of Dorsey & Whitney's contractual obligations under the engagement letter.

In addition, Dorsey & Whitney drafted two opinions, as conditions precedent to the bond issue. The first was a Special Tax Opinion appended to the Official Statement and provided to the purchasers. The second was a 10b-5 negative assurance letter, which was addressed to Municipal Capital but was not attached to the Official Statement. In the letter, Dorsey & Whitney stated that nothing had come to its attention that led it to believe that the Official Statement contained an untrue statement or an omission of material fact.

At some point before the bonds issued, Dorsey & Whitney learned that Witucki was Helicon's President, that Witucki signed the Offer to Purchase Agreement as the manager of SAAS, and that Witucki had signed a promissory note as "CAO" of Crescent Academy.

Allegedly, Dorsey & Whitney and others determined that, because Bay Mills is operated by a federal Indian tribe, there was question of whether Crescent needed another entity to take title of the building on Crescent's behalf and to act as a conduit issuer of the bonds in order for Crescent to obtain tax-exempt status. Drew Academy, another Michigan charter school that was chartered by Central Michigan University, was chosen to act as the conduit issuer. Central Michigan never gave Drew permission to take title to the building on Crescent's behalf or to act as a conduit issuer for the Bonds. The failure to obtain approval from Central Michigan provided grounds for revocation of Drew's charter and a ground for Bay Mills to revoke Crescent's charter.

In December 2006, the bonds were issued and Plaintiffs collectively purchased a majority of the $7,090,000 in bonds. Dorsey & Whitney did not attend the closing. In the following months, Helicon, Crescent, and Witucki became the subject of scrutiny in the Michigan charter school community. In April 2007, Bay Mills and Central Michigan issued notices of intent to revoke the schools' charters. Crescent, Drew, and Plaintiffs were given the choice of "unwinding" the bond issue or having the schools' charters revoked. The bond purchasers agreed to the unwinding (and a loss of $3.8 million) but preserved their right to sue the parties involved. The $7,090,000 bond issue was cancelled, and $3,020,000 in new bonds were issued.

## II.

In December 2008, Plaintiffs filed a complaint against, *inter alia*, Helicon, Municipal Capital, Sims & Co., Dorsey & Whitney, and Witucki. Plaintiffs asserted, *inter alia*, that Dorsey & Whitney had materially assisted in the sale of securities, in violation of the Connecticut Uniform Securities Act (Conn. Gen. Stat. § 36b-29(a)(2)), and that Dorsey & Whitney was liable for common-law negligent misrepresentation.

On Dorsey & Whitney's 12(b)(6) motion, the district court dismissed all of Plaintiffs' claims except for the negligent-misrepresentation claim. The district court determined that Plaintiffs' Connecticut Securities Law claim fell below the material-assistance standard annunciated in *Connecticut Nat'l Bank v. Giacomi*, 699 A.2d 101 (Conn. 1997), because the complaint did not allege that Dorsey & Whitney had engaged in any activity "aimed at influencing" Plaintiffs.

Several months later, Dorsey & Whitney moved for summary judgment on the negligent-misrepresentation claim. Dorsey & Whitney argued that Minnesota rather than Michigan law

applied, that Minnesota law barred Plaintiffs' claim, and that, even if Michigan law applied, there were no genuine issues of material fact. Plaintiffs opposed the motion and also responded with a Federal Rule of Civil Procedure 56(d) declaration, which stated that additional discovery was needed before the court could properly consider the motion for summary judgment.

The district court granted Dorsey & Whitney's motion for summary judgment. The district court bypassed the choice-of-law issue by holding that even under Michigan law Plaintiffs had failed to raise a genuine issue of material fact. Looking at the terms of the January 1, 2003, engagement letter, the court held that the terms of the agreement between Dorsey & Whitney and Municipal Capital demonstrated "that there was no duty owing to Plaintiffs to verify information provided by Dorsey & Whitney's clients in this case."

Plaintiffs then filed a motion for reconsideration, which the district court stated "may have merit." Notwithstanding, the district court ultimately denied the motion for reconsideration because it concluded that Plaintiffs' motion merely raised new arguments, rather than giving the court an opportunity to correct an error evident from the briefing, evidence, or arguments originally made. The court also considered all of Plaintiffs' new arguments and rejected them.

The remaining claims against other defendants ultimately settled, were dismissed, or ended with a judgment in favor of Plaintiffs. This appeal followed. We now reverse and remand.

**III.**

In this appeal, we first address whether the district court erred when it dismissed Plaintiffs' Connecticut Uniform Securities Act claim. We then assess whether the district court erred when it granted summary judgment on Plaintiffs' negligent misrepresentation claim. Finally, we turn briefly

to the district court's alleged error in denying Plaintiffs' request for additional time to complete discovery.

**A.**

We review de novo the district court's dismissal of Plaintiffs' Connecticut securities law claim. *See Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010). We construe a complaint in the light most favorable to a plaintiff and accept as true all well-pleaded factual allegations. *Id.* A plaintiff will survive a motion to dismiss so long as the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

1.

In order to establish aider-and-abettor liability under the Connecticut Uniform Securities Act section 36b-29(a)(2), a plaintiff must prove: (1) A person offered or sold a security by means of an untrue statement of a material fact or an omission of a material fact necessary to make the statement made not misleading, i.e., there is a primary violator. (2) The alleged aider and abettor must have known or in the exercise of reasonable care should have known of the untrue statement or omission of a material fact. (3) The alleged aider and abettor must have materially assisted in the primary violation and in the offer or sale. Conn. Gen. Stat. § 36b-29(a)(2); *Conn. Nat'l Bank*, 699 A.2d at 119, 121-22.

Dorsey & Whitney has conceded, and we agree, that Plaintiffs' complaint alleges sufficient facts for purposes of a 12(b)(6) motion to establish that there was a primary violator of the Connecticut Uniform Securities Act and that Dorsey & Whitney had knowledge that the sale occurred by means of an omission of a material fact—Witucki's conflict of interest that violated

Michigan law. Therefore, we only need to consider whether Dorsey & Whitney materially assisted in the sale and in the violation. We therefore turn to the Connecticut Supreme Court's consideration of the material-assistance standard in *Connecticut National Bank*, 699 A.2d at 121-22.

In *Connecticut National Bank*, a bank brought suit against several defendants, who had executed promissory notes issued by the bank and payable on demand. The defendants had obtained the promissory notes in order to invest in the Great Rings Limited Partnership, which was a real estate investment enterprise. Great Rings allegedly misled the investors by failing to disclose the manifold risks in the enterprise. When the enterprise failed, the bank sought repayment of the promissory notes. *Id.* at 110. When payment was not forthcoming, the bank brought suit against the defendants. The trial court found that the bank had violated section 36b-29(a)(2) by aiding and abetting Great Rings, a finding which entitled the defendants to a complete defense.

On appeal, the Connecticut Supreme Court annunciated the standard for material assistance. "'[A]id is material if it has a natural tendency to influence, or was capable of influencing, the decision of the purchaser.'" *Id.* at 122 (internal quotation marks omitted) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)). "[T]he 'statement itself need not be considered in isolation rather than in the context of the total presentation. A seemingly innocuous oral communication not containing affirmative misrepresentations may violate [§ 36b-29(a)(2)] if it is used to emphasize, or induce reliance on, some other representation that is false or misleading.'" *Id.* (quoting *Metromedia Co. v. Fugazy,* 983 F.2d 350, 361 (2d Cir.1992)). The court then applied this framework to the facts before it and held that the bank materially assisted the primary violator by promoting the investment.

2.

Based upon this standard for material assistance, we conclude that Plaintiffs have pleaded sufficient facts to render plausible their allegation that Dorsey & Whitney materially assisted the sale and the violation. Dorsey & Whitney arguably aided the sale by drafting the Preliminary Official Statement, and editing and revising the Official Statement when Dorsey & Whitney allegedly knew that the Official Statement would be shown and relied upon by the purchasers. Dorsey & Whitney arguably aided the violation by failing to disclose a known conflict of interest, which Dorsey & Whitney allegedly knew violated Michigan law, in the Official Statement. Dorsey & Whitney's omission of material facts created an implication that there were no conflicts of interest or violations of law—an implication that was capable of influencing the purchasers. Had Dorsey & Whitney disclosed these material facts in the Preliminary Official Statement or the Official Statement, it seems unlikely that the bonds would have been purchased.

Dorsey & Whitney's act of preparing a document that omitted a material fact appears to be sufficient to establish aider-and-abettor liability under the material-assistance standard. To be sure, if the material-assistance standard were limited to the facts of *Connecticut National Bank*, then Plaintiffs' claim would necessarily fail. But we can find no language in the Connecticut Supreme Court's opinion that so limits its holding. Moreover, simply because *Connecticut National Bank* involved an alleged material assister who was directly involved in promoting the investment does not mean that touting is required, as Dorsey & Whitney contends, or that the conduct must be specifically aimed at influencing the purchaser, as the district court found, in order to state a viable claim under section 36b-29(a)(2). The Connecticut Supreme Court did not delineate the material-

assistance standard to require anything more than conduct capable of influencing the purchaser. Nor does the statute's language require that the alleged material assister tout the investment or intend to influence a purchaser. Notwithstanding whether such a broad liability scheme is advisable, the language of the statute and the *Connecticut National Bank* decision do not provide a principled reason to impose the limitations advanced by Dorsey & Whitney or the district court.

With the above in mind, it is enough, at this early stage in the litigation, that Dorsey & Whitney allegedly drafted the Preliminary Official Statement and edited and revised the Official Statement knowing that the documents omitted material facts. Plaintiffs have stated a plausible claim for relief under the Connecticut Uniform Securities Act, and therefore, the district court erred when it dismissed this claim.

**B.**

We now turn to the district court's grant of summary judgment on the negligent misrepresentation claim. We review de novo a district court's grant of summary judgment. *Hirsch v. CSX Transp.*, 656 F.3d 359, 362 (6th Cir. 2011). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

1.

Before turning to the merits, however, we must determine what law applies. When exercising supplemental jurisdiction, we apply the choice-of-law provision from the forum state, in this case Michigan. *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999); *Davis v. Sears, Roebuck & Co.*, 873 F.2d 888, 892 (6th Cir. 1989). Under Michigan choice-of-law

principles, we will "apply Michigan law unless a 'rational reason' to do otherwise exists."

*Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 ( Mich. 1997).  When employing

this standard, we must engage in a two-step inquiry.

> First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome.  If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Id.*  The Michigan Court of Appeals later clarified this standard when it added that "[a]lthough this

balancing approach most frequently favors using the forum's (Michigan's) law, Michigan courts

nonetheless use another state's law where the other state has a significant interest and Michigan has

only a minimal interest in the matter." *Hall v. General Motors Corp.*, 582 N.W.2d 866, 868 (Mich.

Ct. App. 1998).

We hold that Michigan law applies to the case at hand.  There can be no real dispute that

Minnesota has an interest in having its law applied—all of Dorsey & Whitney's work occurred in

Minnesota, most of its attorneys are in Minnesota, and all of Dorsey & Whitney's interactions were

with Municipal Capital personnel in Minnesota.  But Minnesota's interest is minimal as compared

to Michigan's interest.  The bond issue involved two Michigan schools, several violations of

Michigan law by defendants in Michigan, and a bond issue that allegedly occurred in Michigan.

Michigan has a far greater interest than Minnesota in such acts and transactions that occurred within

Michigan's borders. *See Olmstead v. Anderson*, 400 N.W.2d 292, 305 (Mich. 1987).  In addition,

over half of the defendants in the underlying action maintained their principal place of business, or

their residence, in Michigan (e.g., Michael Witucki, Kevin Foley, and Helicon Associates). Because

most of the defendants are from Michigan, there is no serious concern regarding forum shopping and

"there can be no serious argument that applying Michigan law will defeat [these defendants']

expectations." *Id.* at 304.[2] In light of these considerations, we conclude that Michigan law applies.

2.

Under Michigan law, a third party may hold an attorney liable for negligent misrepresentation

when the attorney negligently performed a contractual duty and the third party was either someone

the attorney knew would rely on the information or someone the attorney should have reasonably

foreseen would rely on the information. *Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 916 (6th

Cir. 1991). "The only liability an [attorney] has to an injured third-party is with respect to negligent

performance of his or her contractual duty." *See Williams v. Polger*, 215 N.W.2d 149, 156-57 (Mich.

1974). An attorney is potentially liable even though the third party did not know the attorney had

a role in drafting a document related to the transaction. *Molecular Tech.*, 925 F.2d at 916.

Based upon the elements outlined above for a negligent-misrepresentation claim and

reviewing the facts in the light most favorable to Plaintiffs, their negligent misrepresentation claim

should not have been dismissed at the summary judgment stage. It is uncontested that Dorsey &

Whitney had a duty to advise Municipal Capital as to matters of disclosure. A jury could conclude

---

[2]Though Dorsey & Whitney argues that an unpublished decision of the Michigan Court of Appeals supports application of Minnesota law, the case actually supports Plaintiffs' position. *See Goldman, Sachs & Co.*, No. 264224, 2006 WL 361149, at \*4 (Mich. Ct. App. 2006). Unlike the present case, in *Goldman, Sachs*, none of the parties were from Michigan, the court determined that the transaction occurred in New York and not Michigan, and the court determined that there were forum-shopping concerns. *Id.* at \*3-4.

that in order to fulfill this duty, Dorsey & Whitney needed to research Michigan law applicable to the sale of bonds and matters requiring disclosure. In light of Dorsey & Whitney's admissions—that it knew that Witucki was Helicon's President, that Witucki signed the Offer to Purchase Agreement as the manager of SAAS, and that Witucki had signed a promissory note as "CAO" of Crescent Academy—a jury could reasonably conclude that Dorsey & Whitney knew that Witucki was operating under a material conflict of interest, which violated Michigan law and should have been disclosed. Based upon these findings, a jury could determine that Dorsey & Whitney negligently performed a contractual duty when it failed to include the material conflict of interest in the Preliminary Official Statement and in the Official Statement. As experienced underwriters' counsel, it was reasonably foreseeable to Dorsey & Whitney that the Official Statement would be shown to, and the statements in the Official Statement would be relied upon by, the purchasers. Finally, the fact that Plaintiffs may not have known that Dorsey & Whitney drafted the Preliminary Official Statement or edited and revised the Official Statement is irrelevant to the negligent misrepresentation claim. There is, therefore, a genuine issue of material fact about whether Dorsey & Whitney is liable for negligent misrepresentation, and as such, the district court erred.

## C.

Because the district court erred both when it dismissed the Connecticut Uniform Securities Act claim and when it granted Dorsey & Whitney's summary judgment motion on the negligent-misrepresentation claim, we do not need to decide whether the district court abused its discretion when it denied Plaintiffs' request to conduct additional discovery. *See Siggers v. Campbell*, 652

F.3d 681, 695-96 (6th Cir. 2011).  On remand, Plaintiffs should be permitted to engage in discovery

on the Connecticut Uniform Securities Act and Michigan negligent misrepresentation claims.

**IV.**

In light of the above, we **REVERSE** the decision of the district court and **REMAND** for

further proceedings consistent with this opinion.