*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KRISTINA RENE FROST and GARY ALLEN
MAYS, Individually and as Copersonal
Representatives of the ESTATES OF SHAWNA
RENE MAYS and TRISTAN ALLEN MAYS,

UNPUBLISHED
August 26, 2021

Plaintiffs-Appellants,

v

No. 352720
Wayne Circuit Court
LC No. 19-004087-NP

GENERAL MOTORS, LLC,

Defendant-Appellee.

Before: CAVANAGH, P.J., MURRAY, C.J., and REDFORD, J.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order granting defendant's motion for summary disposition in this action arising from a fatal vehicle fire. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 3, 2018, a fire ignited in plaintiff Kristina Frost's 2004 Buick Rendezvous as she drove with her two young children in North Carolina. The children both died as a result of the burns they sustained and Kristina suffered serious injuries while trying to save them. On March 11, 2019, plaintiff, Gary Allen Mays, the children's father, opened probate estates for both of the deceased children in Wayne County, Michigan. On March 21, 2019, plaintiffs filed a multicount complaint against defendant alleging that it bore liability for designing, manufacturing, selling, and failing to recall and fix the alleged seriously defective subject vehicle that caused the deaths of the children and injuries to Frost.[1]

---

[1] Some of the wrongful acts alleged are attributed to defendant's predecessor entity. We do not address the distinctions between defendant and defendant's predecessor in this opinion because it is unnecessary for the disposition of this appeal.

Plaintiffs' complaint alleged that Mays resided in Michigan and that Frost formerly resided in Michigan but currently lived in North Carolina. Defendant, a Delaware corporation, had its principal place of business in Detroit, Michigan. Plaintiffs alleged that Frost owned the 2004 Buick Rendezvous and that defendant "designed, tested, manufactured, distributed, and/or sold" it with design defects that created an unreasonable risk of fires. Plaintiffs alleged that defendant knew of the unreasonable risk of fires but consumers could not until too late. Plaintiffs alleged that Frost would not have purchased the subject vehicle and Mays would not have allowed the children to travel in it, had they known the risks. They alleged that defendant actively concealed the defects, issued inadequate recalls, failed to warn, and continued to sell Buick Rendezvous vehicles.

Defendant moved for summary disposition under MCR 2.116(C)(8), arguing that North Carolina law applied and plaintiffs' claims were barred by North Carolina's statute of repose which provides:

> (1) No action for the recovery of damages for personal injury, death, or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than 12 years after the date of initial purchase for use or consumption. [NC Gen Stat 1-46.1(1).][2]

Defendant also argued that MCL 600.5861, which pertains to cause of action accrual and limitation on commencement of actions, required application of North Carolina's statute of repose.

Plaintiffs responded by arguing, among other things, that Michigan law applied under Michigan's choice-of-law rules because of Mays' Michigan citizenship and the fact that the children's probate estates had been opened in Michigan. In support of plaintiffs' position, plaintiffs attached as exhibits the Letters of Authority for Personal Representatives for the estates of the deceased children issued by the probate court. Plaintiffs asserted that Michigan had an interest in the estates' claims and over property located in the state because Michigan probate courts have jurisdiction over property located in Michigan, including property that is owned by nonresident decedents, even if the only property of value in the minor decedents' estates consists of the pending lawsuit.

Defendant replied by arguing that plaintiffs sought to confuse the issues by attaching the letters of authority. Defendants, therefore, attached the Applications for Informal Probate that Mays filed in the Wayne County Probate Court which identified North Carolina as the domicile and residence of the decedent children. The children's North Carolina Certificates of Death which Mays filed in the probate court along with the applications also identified the domicile and residence of the decedent children as North Carolina at the time of their deaths. Defendant also pointed out that Mays' address listed on the children's Certificates of Death identified him as a

---

[2] While defendant states for the first time on appeal that there is an argument the earlier six-year statute of repose should apply, defendant acknowledges that it never made this argument below. This distinction would only become relevant if plaintiffs were able to show that the initial sale for use took place less than 12 years, but more than 6 years, before March 21, 2019, the date plaintiffs filed the complaint.

North Carolina resident with a North Carolina home address on the date of the incident, and that Frost resided in North Carolina with a North Carolina home address. Defendant argued that the evidence of the parties' residency and the location of the incident established North Carolina's interest in the matter and that, under Michigan's choice-of-law principles, North Carolina law applied requiring dismissal of the action because of North Carolina's statute of repose.

The trial court considered the parties' arguments and their documentary submissions and granted defendant's motion for summary disposition, holding that North Carolina law applied to the action under Michigan's choice-of-law rules, and that North Carolina's statute of repose barred plaintiffs' action. Plaintiffs moved for reconsideration arguing that a Carfax vehicle history report that they submitted with their motion indicated that an issue of fact might exist regarding when and to whom the subject vehicle had been initially purchased for use. The trial court denied the motion. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(8). *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). The trial court may grant the motion if no factual development could justify the plaintiffs' claim for relief. *Id*. When deciding a motion under MCR 2.116(C)(8), the trial court must accept as true all factual allegations contained in the complaint. *Id.* Only the pleadings are to be considered. *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999). However, in *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000) (citations omitted), this Court explained:

> Although defendants brought their motions for summary disposition pursuant to MCR 2.116(C)(8), the parties and the trial court relied on documentary evidence beyond the pleadings. Therefore, we will treat the motions as having been granted pursuant to MCR 2.116(C)(10) and examine the pleadings and the documents.

We review de novo a trial court's ruling on a motion for summary disposition under MCR 2.116(C)(10) which tests whether there is factual support for a claim. The trial court must consider affidavits, pleadings, depositions, admissions, and other documentary evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Id*. (citations omitted). We also review de novo conflict-of-law issues. *Frydrych v Wentland*, 252 Mich App 360, 363; 652 NW2d 483 (2002).

## III. ANALYSIS

### A. CHOICE OF LAW

Plaintiffs argue that the trial court erred by ruling that North Carolina law applied to this case and by granting defendant summary disposition on the ground that North Carolina's statute of repose barred their claims. We disagree.

The threshold question in this case is whether North Carolina law applied. If it does, then it must be determined if North Carolina's statute of repose applied. North Carolina's statute of repose bars all claims for damages for personal injury, death, or damage to property based upon any alleged defect or failure in relation to a product more than 12 years after the date of the

product's initial purchase for use or consumption. NC Gen Stat 1-46.1(1). Defendant argues that *Farrell v Ford Motor Co*, 199 Mich App 81; 501 NW2d 567 (1993), and *Hall v Gen Motors Corp*, 229 Mich App 580; 582 NW2d 866 (1998), require application of North Carolina law, including the statute of repose. Plaintiffs argue, among other things, that *Farrell* and *Hall* are no longer good law because Michigan's choice-of-law analysis evolved away from the reasoning articulated in those cases and now requires courts to decide the issue on policy grounds. Plaintiffs' argument lacks merit.

In *Farrell*, the estate of a North Carolina resident who died in a motor vehicle accident in North Carolina brought a product liability suit in Michigan alleging that a Ford vehicle's defects caused the decedent's death. This Court considered whether Michigan law or North Carolina law applied. The trial court had denied defendant's motion for summary disposition and held that Michigan law applied precluding application of the then-current North Carolina statute of repose. *Farrell*, 199 Mich App at 83-84. This Court held that, under *Olmstead v Anderson*, 428 Mich 1; 400 NW2d 292 (1987), "the law of the forum (lex fori) should be applied unless there is a 'rational reason' to displace it." *Farrell*, 199 Mich App at 86. This Court explained that, when such a rational reason exists, trial courts must resolve the conflict-of-law issue by balancing the interests of the two states. *Id.* at 86-89, 94.

This Court noted evidence in the record showing that Ford had a substantial commercial presence in North Carolina, including employees located there, purchased materials from North Carolina suppliers, and sold cars there. *Id*. at 93. This Court found that North Carolina had an obvious interest to "encourage manufacturers . . . to do business in North Carolina" which contributed to North Carolina's economy. *Id*.[3] This Court agreed with the defendant that the defendant's "substantial business dealings with the citizens of North Carolina gives North Carolina a substantial interest in encouraging more commercial activity and in affording defendant the protection provided by that state's statute of repose." *Id*. at 94. This Court reasoned:

> While North Carolina has a substantial interest in applying its law, Michigan has little or no interest in this North Carolina accident involving a North Carolina resident. Michigan has no interest in affording greater rights of tort recovery to a North Carolina resident than those afforded by North Carolina. Michigan is merely the forum state and situs of defendant's headquarters. Such minimal interests are insufficient to justify the result-oriented forum shopping that has been attempted. [*Id.* at 94 (citation omitted).]

This Court held that North Carolina law applied and the trial court erred by concluding otherwise. *Id*.[4]

---

[3] *Farrell* also expressly disapproved *Mahne v Ford Motor Co*, 900 F2d 83 (CA 6, 1990), one of the cases relied on by plaintiffs. *Farrell*, 199 Mich App at 90.

[4] In a footnote, this Court further explained that the even if the vehicle had been designed and manufactured in Michigan its analysis would be the same. *Farrell*, 199 Mich App at 94 n 3.

In *Sutherland v Kennington Truck Serv, Ltd*, 454 Mich 274, 275; 562 NW2d 466 (1997), a case that arose from an accident involving an Ontario driver and an Ohio driver on a Michigan highway, our Supreme Court further clarified choice-of-law analysis:

> [W]e will apply Michigan law unless a "rational reason" to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests. [*Id*. at 286.]

The next year, this Court decided *Hall*, a case in which a North Carolina resident injured himself in North Carolina while working on an allegedly defective vehicle. The plaintiff, however, resided in Michigan when he filed the lawsuit. *Hall*, 229 Mich App at 583. This Court analyzed the case under the balancing test articulated in *Sutherland*. *Id*. at 585. This Court held that a plaintiff's residency should be assessed at the time of injury for choice-of-law purposes. *Id.* at 591. This Court noted that "GM has facilities in North Carolina and does substantial business there, including purchasing materials and parts to be incorporated into its automobiles." *Id.* at 584. This Court stated that, "[a]s in *Farrell*, we conclude that North Carolina has a substantial interest in having its law applied to this dispute." *Id.* at 587. Likewise, as in *Farrell*, this Court concluded that Michigan had only minimal, insufficient interests in the accident. *Id.* Because North Carolina law applied, the then-current statute of repose barred the suit. *Id.* at 593.

We find no merit to plaintiffs' argument that *Farrell* and *Hall* are no longer good law. *Farrell* and *Hall* are consistent with our Supreme Court's choice-of-law analytical framework articulated in *Sutherland*. Plaintiffs seek to rely on *Gaillet v Ford Motor Co*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued May 3, 2017 (Case No. 16-13789), to support their position. Although lower federal court decisions may be instructive, they are not binding on this Court. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004). Moreover, in *Gaillet*, the federal court merely made the unexceptional point that those portions of *Farrell* which discussed the evolution and background of Michigan's choice-of-law rules should not be quoted as if they represented current law. *Gaillet*, however, did not criticize *Farrell*'s holding or the legal principles underlying it. The other cases cited by plaintiffs similarly fail to support their argument. Contrary to plaintiffs' contentions, *Farrell* and *Hall* remain binding precedent that, along with *Sutherland*, must guide our decision.

"Choice-of-law issues are to be decided case by case." *Burney v P V Holding Corp*, 218 Mich App 167, 172; 553 NW2d 657 (1996). Under *Sutherland*, we must first determine if any foreign state has an interest in having its law applied. In this case, the parties do not dispute that the fire occurred in North Carolina. Under *Hall*, plaintiffs' residency must be assessed at the time of injury for choice-of-law purposes. Plaintiffs' complaint contains no allegation about the residency of any of the plaintiffs at the time of the fire. Instead, plaintiffs alleged that, at the time of filing their complaint, Mays resided in Michigan, Frost resided in North Carolina, and the children's estates were opened in Michigan by Mays. Plaintiffs conceded below and concede again on appeal that Frost resided in North Carolina at the time of the incident. The record reflects that, at the time of the children's deaths, they each resided with their mother in Lenoir, North

Carolina. The children's respective North Carolina death certificates indicate that the children were North Carolina residents at the time of the incident. The children's death certificates also indicate that Mays resided in Cullowhee, North Carolina, on or around the time of the incident. Plaintiffs assert in their brief that Mays resided in Michigan at the time of the incident but the record lacks evidentiary support for that assertion. The trial court found that the children and Mays resided in North Carolina at the time of the incident based upon the children's death certificates. We are not persuaded that the trial court erred in this regard. Even if Mays resided in Michigan at the time of the incident, because the fire occurred in North Carolina, injured one North Carolina resident, and killed two North Carolina residents, North Carolina certainly had an interest in this case, establishing a rational reason to apply North Carolina law. See, e.g., *Hall*, 229 Mich App at 585-586.

The next step in the analysis is to "determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Sutherland*, 454 Mich at 286. The forum-shopping concerns expressed in *Hall* and *Farrell* are similarly relevant in this case, given that plaintiffs admit that "the only property of significant value in the minor decedents' estates is the pending lawsuit." Also, similar to *Farrell* and *Hall*, Frost and the children were not Michigan residents and were North Carolina residents at the time of the incident. While residency is just one of the factors that goes into weighing states' respective interests in a case, it is an important one. Further, we give no weight to the fact that the children's estates were opened in Michigan. In *Burney*, 218 Mich App at 173-174, this Court explained that, in a wrongful-death action, the residency of the personal representative of a decedent's estate is determined by the residency of the decedent at the time of death for choice-of-law purposes. In this case, the children resided and tragically died in North Carolina. The trial court, therefore, had to consider their personal representatives' residency in North Carolina. The fact that the incident occurred in North Carolina and involved North Carolina residents weighs in favor of applying North Carolina law.

Plaintiffs submitted a Carfax vehicle history report that indicated that the subject 2004 Buick Rendezvous had been first sold in late 2003 in North Carolina, then resold a couple times thereafter in North Carolina. The trial court found that defendant sells and distributes vehicles in North Carolina and North Carolina has an ongoing economic interest in encouraging defendant to conduct business in North Carolina. In *Farrell*, 199 Mich App at 94, this Court held that Michigan had "little or no interest" in having its law applied when Michigan merely constituted the forum state and situs of the defendant's headquarters and manufacturing. This Court determined further that North Carolina had a substantial economic interest in encouraging manufacturers to do business in North Carolina by extending to such manufacturers the benefit of North Carolina's statute of repose as protection from open-ended products liability claims. *Id.* at 93-94. Those same conclusions apply in this case. Michigan has little interest in this case other than as the forum state and situs of the defendant's headquarters and manufacturing. After balancing the respective state interests, we hold that North Carolina's interest outweighs Michigan's minimal interest. The record reflects that the trial court properly applied the principles articulated in *Sutherland*, *Hall*, and *Farrell*, and determined that North Carolina law applied in this case.

The trial court also correctly determined that North Carolina's statute of repose applied and required dismissal of plaintiffs' claims. The record supports the trial court's determination that the plaintiffs' claims sought damages for personal injury, death, or damage to property based upon an alleged defect or failure in relation to a product more than 12 years after the date of the product's

initial purchase for use. The record indicates that the subject vehicle first had been purchased in North Carolina in late 2003 and resold at least twice thereafter in North Carolina.[5] Therefore, more than 12 years elapsed from the time of the initial purchase for use. Accordingly, NC Gen Stat 1-46.1(1), North Carolina's statute of repose, applied in this case and barred all of plaintiffs' claims for damages for personal injury, death, or damage to property which were all based upon an alleged defect or failure of the subject vehicle. Accordingly, the trial court did not err by granting defendant summary disposition.

Because it held that the choice-of-law analysis required application of North Carolina law, the trial court did not decide whether Michigan's borrowing statute, MCL 600.5861, provided an alternative basis for applying the North Carolina statute of repose. We similarly conclude that that issue is now moot and decline to address it. See *Farrell*, 199 Mich App at 94.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Christopher M. Murray
/s/ James Robert Redford

---

[5] We find no merit to plaintiffs' argument that the subject vehicle's initial purchase for use could have been by a dealer because the Carfax vehicle history report that they submitted to the trial court with their motion for reconsideration references that in January 2012 a dealer obtained the vehicle which they contend may indicate that the statute of repose period may not have elapsed and that they should have been permitted discovery and an opportunity to amend their complaint. Analysis of that vehicle history report, however, plainly indicates that the first initial purchase for use of the vehicle occurred in December 2003 and clarifies that the Auto Auction Southeast Region obtained the vehicle in January 2012 and 11 days later that entity sold the vehicle to the second purchaser. Under North Carolina law, a dealer-distributor's purchase of a product for the purpose of resale is not the "initial purchase for use" within the meaning of North Carolina's statute of repose. See *Chicopee, Inc v Sims Metal Works, Inc*, 98 NC App 423, 427; 391 SE2d 211 (1990). Further, as explained in *Chicopee*, North Carolina's Legislature chose to begin the timing of statutes of repose periods at the date of the initial purchase for use. *Id*. at 429.

We also find no merit to plaintiffs' argument that the deceased minor children's claims were not barred by North Carolina's statute of repose because North Carolina's statute that applies to accrual of claims and the running of limitation periods permits minors to bring claims after their disability has been removed. See NC Gen Stat 1-17(a). The plain language of that statute, however, clearly indicates that it does not apply to statutes of repose but tolls statutes of limitation only.

We decline to address plaintiffs' argument regarding the constitutionality of North Carolina's statute of repose because plaintiffs did not raise and the trial court did not address this issue. Therefore, plaintiffs waived the issue for appellate review. *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008).